**Jonathan M. WIENER, Plaintiff–Appellant,**

v.

**FEDERAL BUREAU OF INVESTIGATION; Federal Bureau of Investigation, Los Angeles Field Office; Federal Bureau of Investigation, New York Field Office; Federal Bureau of Investigation, Detroit Field Office, Defendants–Appellees.**

No. 88–5867.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1989.

Decided July 12, 1991.

As Amended Sept. 26, 1991.

Mark D. Rosenbaum, American Civil Liberties Union Foundation of Southern California, Dan Marmalefsky, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., for plaintiff-appellant.

Miriam McIntire Nisbet, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Judith R. Epstein, Crosby, Heafey, Roach & May, Oakland, Cal., for amicus.

Before BROWNING, SCHROEDER and FERGUSON, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Professor Jonathan M. Wiener, Professor of History at the University of California, Irvine, filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), for disclosure of records of the Federal Bureau of Investigation concerning John Lennon, late member of the

Beatles. Professor Wiener sought to further his research into John Lennon's life,[1] and to bolster his thesis that the investigation of Mr. Lennon by the FBI in the late 1960s and early 1970s reflected the use of executive agency power to suppress political dissent.

The FBI withheld some of the requested records as exempt from disclosure by the terms of the Act.[2] Weiner filed this action to compel complete disclosure and moved to require the FBI to explain why each document withheld was exempt. In response, the FBI filed affidavits of two FBI agents and one CIA agent justifying the withholdings in general terms. The district court ordered the FBI to submit *in camera* further justification for the withholdings. The FBI filed two additional affidavits and a copy of each withheld document.[3] The court then granted the FBI's motion for summary judgment.

Wiener appealed contending: (1) the public affidavits were inadequate; (2) the district court's findings of fact and law were insufficient; and (3) there were triable issues of fact with respect to the propriety of the claims of exemption. We agree with Wiener's first two contentions and reverse. We do not find it necessary to reach Wiener's third claim.

## I

Ordinarily, rules of discovery give each party access to the evidence upon which the court will rely in resolving the dispute between them. In a FOIA case, however, because the issue is whether one party will disclose documents to the other, only the party opposing disclosure will have access to all the facts. *See King v. Dep't of Justice,* 830 F.2d 210, 218 (D.C.Cir.1987); *Vaughn v. Rosen,* 484 F.2d 820, 823–25 (D.C.Cir.1973).

"This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system[ ]." *Vaughn,* 484 F.2d at 824. The party requesting disclosure must rely upon his adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments. It is simply "unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case." *Id.* at 825.

■ In recognition of this problem, government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a *"Vaughn* index,"[4] identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption. *See King,* 830 F.2d at 223–24 (describing the content of a *Vaughn* index); *Mead Data Central, Inc. v. Dep't of the Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977) (same). The purpose of the index is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King,* 830 F.2d at 218. The index thus functions to restore the adversary process to some

---

1. Professor Wiener authored *Come Together: John Lennon In His Time* (Random House 1984), a study of Mr. Lennon.

2. Exemptions were claimed under § 552(b)(1) (properly classified information), § 552(b)(2) (documents related solely to the internal practices of an agency), § 552(b)(3) (documents exempted from disclosure by statute), § 552(b)(7)(C) (information compiled for law enforcement purposes if the release would constitute an unwarranted invasion of personal privacy), and § 552(b)(7)(D) (information com-

piled for law enforcement purposes if the release would disclose the identity of a confidential source). Wiener has not appealed the withholdings under § 552(b)(2).

3. Wiener was not permitted to examine these *in camera* submissions.

4. See, e.g., *Binion v. Dep't of Justice,* 695 F.2d 1189, 1193 (9th Cir.1983); *Hardy v. Bureau of Alcohol, Tobacco & Firearms,* 631 F.2d 653, 657 (9th Cir.1980); *King,* 830 F.2d at 218; *Vaughn,* 484 F.2d at 827.

extent, and to permit more effective judicial review of the agency's decision.[5]

The district court required a *Vaughn* index in this case. In response to the court's order, the FBI supplied the court and Wiener with the affidavits of three federal agents; the FBI later filed two additional public affidavits.[6] Whether the government's public affidavits constituted an adequate *Vaughn* index is a question of law reviewed *de novo*. *Binion v. Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir.1983). We conclude they did not.

The substance of the affidavits consisted of redacted copies of documents partially withheld and blacked out copies of documents withheld in their entirety, with one or more handwritten four digit codes written next to each withheld portion. The first two digits of each code identified the statutory exemption claimed by the FBI. For example, the notation "(b)(1)," is a reference to 5 U.S.C. § 552(b)(1), and indicates that the exemption for properly classified documents ("Exemption 1") was claimed. The next two digits of each code refer to one of a number of categories of information listed in the affidavits into which the withheld information allegedly fell. For example, "c3" refers to "detailed information pertaining to/or provided by an intelligence source." The affidavits list up to nine categories of information for each of the statutory exemptions claimed.

The affidavits then state in general terms why each category of information should be withheld. The explanation given for the withholding of "(b)(1) c3" information (detailed information provided by an intelligence source) is representative:

Information of this category is *either* specific in nature *or* of a unique character, and thereby could lead to the identification of a source. *For example*, this information *may* contain details obtained from a one-on-one conversation between a source and another individual. It *may* be of such detail that it pinpoints a critical time frame *or* reflects a special vantage point from which the source was reporting. The information *may* be more or less verbatim from a source's report and thus reveal a style of reporting peculiar to that source along with other clues as to authorship, such as handwritten *or* typewritten reports of the informant. The nature of the information *may* be such that only a handful of parties would have access to it. It is the degree of specificity of this information that endangers the source's continued anonymity....

(Emphasis added). Precisely the same explanation is given for each "(b)(1) c3" withholding.

These "boilerplate" explanations were drawn from a "master" response filed by the FBI for many FOIA requests.[7] No

---

**5.** The role of the *Vaughn* index in enabling the adversary process to function in FOIA cases is universally recognized. *See, e.g., Vaughn,* 484 F.2d at 828; *Orion Research, Inc. v. EPA,* 615 F.2d 551, 553 (1st Cir.1980); *Donovan v. FBI,* 806 F.2d 55, 58 (2d Cir.1986); *Ferri v. Bell,* 645 F.2d 1213, 1222 (3d Cir.1981) *modified on other grounds* 671 F.2d 769 (3d Cir.1982); *Ingle v. Dep't of Justice,* 698 F.2d 259, 263 (6th Cir.1983); *Stein v. Dep't of Justice,* 662 F.2d 1245, 1253 (7th Cir.1981); *Davis v. CIA,* 711 F.2d 858, 861 (8th Cir.1983); *Ollestad v. Kelley,* 573 F.2d 1109, 1110 (9th Cir.1978); *Ely v. FBI,* 781 F.2d 1487, 1492 (11th Cir.1986); S.Rep. No. 854, 93d Cong., 2d Sess. 14–15 (1974).

Consistent with its purpose, a *Vaughn* index is not required where it is not needed to restore the traditional adversary process. Thus, in *Brown v. FBI,* 658 F.2d 71 (2d Cir.1981), the Second Circuit held that a *Vaughn* index was not required because the FOIA requester had acquired sufficient facts to permit the adversary process to function. *Id.* at 74. Similarly, in

*Lewis v. Internal Revenue Service,* 823 F.2d 375 (9th Cir.1987), we held that a *Vaughn* index was not required because the entire class of documents requested was *per se* exempt from disclosure regardless of the content of each withheld document. *Id.* at 380. The government gained no advantage from access to material facts the FOIA requester lacked.

**6.** Affidavits were filed by Special Agents Robert J. Chester and Robert F. Peterson of the FBI, and Information Review Officer Louis J. Dube of the CIA. Brief supplementary affidavits were filed by Supervisory Special Agent Chris J. Flynn of the FBI and Lee E. Carle, Mr. Dube's successor at the CIA. We refer to these affidavits collectively as the *Vaughn* index.

**7.** The FBI's explanation for the withholding of information "Pertaining To Or Provided By An Intelligence Source ..." in *King,* 830 F.2d at 223 n. 96, and the FBI's explanation for the withholding in this case, quoted above, are virtually identical.

effort is made to tailor the explanation to the specific document withheld. Remarkably, in the original *Vaughn* index submitted by the FBI, John Lennon's name does not appear at all.[8] The explanations offered are precisely the sort of "[c]ategorical description[s] of redacted material coupled with categorical indication of anticipated consequences of disclosure" the D.C. Circuit properly rejected in *King* as "clearly inadequate." *King*, 830 F.2d at 224.

This categorical approach affords Wiener little or no opportunity to argue for release of particular documents. The most obvious obstacle to effective advocacy is the FBI's decision to state alternatively several possible reasons for withholding documents, without identifying the specific reason or reasons for withholding each particular document. Effective advocacy is possible only if the requester knows the precise basis for nondisclosure. *King*, 830 F.2d at 218–19. The agency may give alternative reasons for withholding a document only if each reason is applicable to the document at issue.

Moreover, the level of specificity in the index submitted in this case is insufficient. "Specificity is the defining requirement of the *Vaughn* index." *King*, 830 F.2d at 219; *see also Vaughn*, 484 F.2d at 827. Unless the agency discloses "as much information as possible without thwarting the [claimed] exemption's purpose," *King*, 830 F.2d at 224, the adversarial process is unnecessarily compromised. The FBI did not disclose all it could. Indeed, the index provides no information about particular documents and portions of documents that might be useful in contesting nondisclosure—the two principal affidavits of Agents Chester and Peterson make no reference to any particular document at all.

■ *In camera* review of the withheld documents by the court is not an acceptable substitute for an adequate *Vaughn* index. *In camera* review does not permit

effective advocacy. *See Doyle v. FBI*, 722 F.2d 554, 556 (9th Cir.1983); *Vaughn*, 484 F.2d at 825. Therefore, resort to *in camera* review is appropriate only after "the government has submitted as detailed public affidavits and testimony as possible." *Doyle*, 722 F.2d at 556; *see also, Ingle v. Dep't of Justice*, 698 F.2d 259, 266 (6th Cir.1983) ("no court should consider *in camera* review if a Vaughn Index can adequately resolve the issue"). *In camera* review may supplement an adequate *Vaughn* index, but may not replace it.[9] *Cf. NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) ("*in camera* review ... is designed to be invoked when the issue before the District Court could not be otherwise resolved").

In revising the *Vaughn* index on remand, the FBI must bear in mind that the purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure under one or more of the statutory exemptions, but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest.

We turn to a consideration of each of the four statutory exemptions claimed by the FBI in this case.[10]

### A

### *Exemption 1: National Security*

Exemption 1, 5 U.S.C. § 552(b)(1), permits the government to withhold documents and portions of documents which have been properly classified pursuant to Executive Order. *Id.* The Executive Order currently in force authorizes the classification of documents "the unauthorized disclosure of which reasonably could be expected to cause damage to the national security." Exec. Ord. 12356 § 1.1(a)(3), 3

---

**8.** John Lennon's name does appear in the supplemental affidavit of Agent Flynn.

**9.** For this reason, the government's argument that the district court's *in camera* review of the withheld documents provided that court with a

sufficient factual basis for its decision is inapposite.

**10.** *See* supra note 2.

C.F.R. 166, 167 (1983).[11] Though an executive agency's classification decisions are accorded substantial weight, the FOIA permits challenges to Exemption 1 withholdings, requires the district court to review the propriety of the classification, and places the burden on the withholding agency to sustain its Exemption 1 claims. *Abbotts v. Nuclear Regulatory Comm'n,* 766 F.2d 604, 606 (D.C.Cir.1985); *see also, Stein v. Dep't of Justice,* 662 F.2d 1245, 1256–59 (7th Cir.1981) (reviewing the propriety of the agency's classification decision). The government's affidavits did not provide Wiener a reasonable opportunity to contest the Exemption 1 withholdings.

### (1) *Confidential Source Information*

■ Many of the Exemption 1 withholdings were based on the FBI's conclusion that release of the withheld documents would damage national security by leading to the disclosure of a confidential source. *See* Exec. Ord. 12356 § 1.3(a)(9), 3 C.F.R. at 169 (information concerning confidential sources is subject to classification). As discussed in more detail in connection with the FBI's withholdings under Exemption 7D (relating specifically to confidential sources), the withholding agency must provide the court and the FOIA requester with information sufficient to determine whether the source was truly a confidential one and why disclosure of the withheld information would lead to exposure of the source. *See* infra at 986–987. Because the

*Vaughn* index makes no effort to do so, it is inadequate.

■ Moreover, merely showing the source was confidential and would be revealed by production of the withheld document, is not sufficient to sustain an Exemption 1 claim. In addition, Exemption 1 is available only if disclosure of the source "could reasonably be expected to cause damage to the national security." Exec. Ord. 12356 § 1.1(a)(3), 3 C.F.R. at 167. To justify an Exemption 1 claim, the *Vaughn* index must provide (to the extent permitted by national security needs) sufficient information to enable the requester to contest the withholding agency's conclusion that disclosure will result in damage to the nation's security.

The index in this case does not meet this standard. The index lists eight categories of information the FBI asserts could expose a confidential source,[12] and a single explanation of the harm to national security that may flow from disclosure of a source's identity:

> Exposure of an intelligence source can result in termination of the source; discontinuance of the source's services; exposure of other ongoing intelligence gathering activities; modification or cancellation of future intelligence gathering activities; evaluation by hostile entitites of the number and objectives of intelligence sources targeted against them, followed by appropriate countermeasures;

**11.** Many of the cases cited in this opinion were decided under Executive Order 12065 which governed classification decisions prior to the enactment of Executive Order 12356. We reject the government's argument that these cases, and in particular *King,* 830 F.2d 210, no longer have any relevance in light of the revised classification scheme. Regardless of the substantive standards for the classification of documents, it is still necessary for the withholding agency to produce an adequate *Vaughn* index to permit the adversary process to function.

The government relies specifically upon Exec. Ord. 12356 § 1.3(c), 3 C.F.R. at 169, declaring that the release of certain classes of information "is presumed to cause damage to the national security," to emphasize that the withholding of these classes of information is particularly important. Again, however, the issue before us is not the importance of withholding certain cate-

gories of classified information, or even the propriety of the classification of the withheld documents in this case; rather the issue is whether Wiener has been afforded an adequate opportunity to challenge the government's decision to classify. For the reasons stated above, we hold he has not.

**12.** Those categories are: (1) names and code-names, (2) information which reveals "the character or degree of source coverage or penetration," (3) detailed information pertaining to or provided by an intelligence source, (4) dates furnished by an intelligence source, (5) instructions for the dissemination of information, (6) the date or place of a contact between an intelligence source and his government contact, (7) the identity of the intelligence source's government contact, and (8) information about subsidiary investigations such as background checks.

and an overall chilling effect on the climate of cooperativeness with respect to the unwillingness of intelligence sources, both current and prospective, to risk the probability of exposure with its potential effect of possible loss of life, jobs, friends, status, etc., all of which can reasonably be expected to hamper intelligence collection ability and result in damage to the national security.

The index fails to tie the FBI's general concern about disclosure of confidential sources to the facts of this case. The index does not describe any particular withheld document, identify the kind of information found in that document that would expose the confidential sources, or describe the injury to national security that would follow from the disclosure of the confidential source of the particular document. The FBI must have made such an analysis in concluding that disclosure of some informants or classes of informants would damage national security and disclosure of others would not.[13] Yet none of the informa-

tion and analysis necessarily considered is made available to Wiener or the court.[14] The index simply relies on general assertions that disclosure of certain categories of facts may result in disclosure of the source and disclosure of the source may lead to a variety of consequences detrimental to national security.

### (2) *Intelligence Activities and Methods*

■ The discussion in the affidavits of withholdings based on the exemption from disclosure of information related to intelligence activities and methods is particularly scanty.

We are once again given only a generalized, theoretical discussion of the possible harms which can result from the release of this category of information.[15] The FBI has again failed to state the specific harms which may result from the release of a particular document. The explanations are simply too broad to be of any use to Wiener, the district court, or this court.

---

**13.** It is clear the FBI has not concluded that the release of the identity of an informant *per se* damages national security. The FBI has concluded that the release of the name of the New York University official who told the FBI the University had offered John Lennon a teaching post would not damage national security. *See* infra at 987.

**14.** For example, the index does not explain how the disclosure of the identity of individuals who assisted in the investigation of John Lennon will reveal to "hostile entities" the "number and objectives of intelligence sources targeted against them." Nor does the index provide any factual background for the conclusion that "[e]xposure of an intelligence source can result in termination of the source [or] discontinuance of the source's services." Most obviously, the district court needs to know whether the source is still useful as an informant, or even alive. *See King,* 830 F.2d at 221 n. 90.

**15.** The affidavit states:
Disclosure of information concerning intelligence activities, sources or methods can result in damage to the national security in several ways. First, its disclosure could reveal the existence of a particular intelligence or counterintelligence investigation/operation. Disclosure could reveal or indicate the nature, objectives, requirements, priorities, scope or thrust of the intelligence or counter-

intelligence investigation/operation. Disclosure could identify data used in the acquisition and processing of intelligence or counterintelligence information, and such identification could reveal a particular intelligence interest, the value of the intelligence, or the extent of knowledge of a particular target of intelligence or counterintelligence interest. Disclosure could reveal a particular method used to obtain or process intelligence or counterintelligence information. Such disclosure would allow hostile entities' assessment of both general and specific intelligence collection capabilities during a particular time frame, and hostile assessment of areas and targets which may have been compromised or may not have been compromised; allow countermeasures to be implemented, making future intelligence operations more difficult, and would compromise other ongoing and planned intelligence operations.
This explanation leaves unanswered the following relevant questions, among others. Is it realistic to expect disclosure of a twenty year old investigation to reveal the existence of a current intelligence investigation? If so, why? Why is it reasonable to expect that the disclosure of documents from the investigation of John Lennon would reveal the objectives or priorities of current intelligence operations? Are the intelligence methods used in the investigation of John Lennon still used today, justifying continued secrecy?

### (3) Information about Foreign Relations and Governments

■ The same is true of the FBI's discussion of information concerning foreign relations and foreign governments. Again, we are given broad explanations of alternative harms that might result from the release of the withheld information. No explanation is given why seemingly far-fetched harms, such as the FBI's claim that release of the withheld information will "[l]ead to ... military retaliation against the United States," have any relevance to the particular documents withheld.

### B

### Exemption 3: Withholding Authorized by Another Statute

Exemption 3, 5 U.S.C. § 552(b)(3) (1988), authorizes the withholding of documents "specifically exempted from disclosure by statute" other than the FOIA itself. *Id.* The FBI relied upon four separate statutes to support its Exemption 3 withholdings.

### (1) Records Relating to Visa Applications

■ The FBI relied upon 8 U.S.C. § 1202(f) (1988) in withholding three documents. Section 1202(f) provides that Department of State "records ... pertaining to the issuance or refusal of [immigration] visas ... shall be considered confidential." Section 1202(f) specifically exempts such documents from FOIA disclosure. *Medina–Hincapie v. Dep't of State*, 700 F.2d 737, 741–42 (D.C.Cir.1983); *DeLaurentiis v. Haig*, 686 F.2d 192, 193 (3d Cir.1982).

■ The *Vaughn* index does little more than recite the language of section 1202(f). This is not sufficient. The withholding agency's understanding of the scope of section 1202(f) may be incorrect. To enable the FOIA requester to challenge the FBI's conclusion that the documents withheld fell within section 1202(f), the *Vaughn* index must provide a description of the withheld

documents, without breaching section 1202(f)'s mandate of confidentiality. Here, for example, without breaching confidentiality, the FBI could have disclosed that the withheld records concerned a foreign citizen's request for a temporary waiver of certain visa requirements, and included the investigating official's recommended disposition of the request.

### (2) Records Relating to Tax Returns

■ The FBI relied upon 26 U.S.C. § 6103 in withholding one document.[16] Section 6103 states that "[tax] return information shall be confidential." *Id.* § 6103(a). The FBI's *Vaughn* index states only that tax return information was withheld.

Ordinarily, we would find such an explanation of a withholding of tax return information insufficient. Section 6103 contains a long and complex definition of tax return information. *See id.* § 6103(b)(2)(A). Reasonable people could differ as to its interpretation. *Cf. Church of Scientology of California v. Internal Revenue Service*, 792 F.2d 153 (D.C.Cir.1986) (divided en banc court disagreeing over the interpretation of section 6103(b)(2)), *aff'd*, 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1984). For this reason, the withholding agency must ordinarily provide the FOIA requester with a description of the withheld information sufficient to enable the FOIA requester to challenge the agency's understanding of the scope of section 6103 reflected in the decision to withhold. The confidentiality guaranteed by section 6103 will not be compromised as long as the identity of the person about whom the tax return information relates is not revealed.

Here, however, the released portions of the document suggest the identity of the person whose privacy interests are protected by section 6103. Thus, if the withholding agency were to reveal the precise nature of the tax return information, the confidentiality guaranteed by section 6103 would be compromised. For this reason,

---

**16.** Section 6103 specifically exempts documents from FOIA disclosure, *Lessner v. Dep't of Commerce*, 827 F.2d 1333, 1336 (9th Cir.1987), and is therefore an appropriate predicate for an Exemption 3 withholding.

the FBI could not disclose more than it did, and therefore was not required to do so.

### (3) *CIA Information*

■ 50 U.S.C. § 403(d)(3) (1988) states "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403g (1988) states that "the [Central Intelligence] Agency shall be exempted from the provisions of ... any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." Both of these statutes specifically exempt information from FOIA disclosure. *National Comm'n on Law Enforcement v. CIA*, 576 F.2d 1373, 1376 (9th Cir.1978); *see also CIA v. Sims*, 471 U.S. 159, 167, 105 S.Ct. 1881, 1886–87, 85 L.Ed.2d 173 (1985) (discussing section 403(d)(3) only).

■ The FBI relied upon § 403(d)(3) and § 403g in withholding parts of four documents. The FBI relied upon the affidavit of CIA Agent Dube to justify these withholdings.[17] This affidavit, unlike those submitted by the FBI agents, discusses each document separately. It provides sufficient information with respect to all but one of the withholdings. Two of the withholdings consist only of codenames, identified as such in the Dube affidavit. Codenames plainly fall within section 403g's exemption of the names of CIA agents. No

further disclosure would have enabled Wiener to argue for their release. One paragraph of a document labeled CIA–3 was withheld because it identified the location of a CIA installation outside the United States. The Dube affidavit describes how disclosure of this information would compromise "intelligence sources and methods," 50 U.S.C. § 403(d)(3), by leading to public pressure within the host nation to terminate its relationship with the CIA. This was sufficient to enable Wiener and the court to determine whether the government's conclusion that withholding was necessary to protect intelligence sources and methods was subject to challenge.[18]

■ The Dube affidavit is insufficient, however, with respect to the document labeled CIA–2. The Dube affidavit justifies the deletions of three paragraphs from this document with the statement that "disclosure of [the withheld] portions reasonably could be expected to lead to identification of the source of information." The affidavit fails to discuss the facts or reasoning upon which Agent Dube based his conclusion, and thus affords Wiener no opportunity to contest that conclusion.[19]

### C

#### *Exemption 7C: Privacy*

■■ Exemption 7C, 5 U.S.C. § 552(b)(7)(C), permits the government to withhold documents and portions of documents "compiled for law enforcement pur-

---

17. This discussion pertains only to information withheld in reliance upon the Dube affidavit. To the extent the FBI relies upon other affidavits to justify the withholding of additional information, we find the affidavits inadequate for the reasons stated in this opinion.

18. Unlike withholdings under Exemption 1, a withholding agency relying upon section 403(d)(3) to protect an intelligence source need not demonstrate disclosure of the source will damage national security. *Sims*, 471 U.S. at 169–70, 105 S.Ct. at 1887–88. Nonetheless, the information provided in the Dube affidavit is sufficiently specific to constitute an adequate *Vaughn* index with respect to Exemption 1 as well. It states in detail the nature of the information (location of a CIA station) and the harm to national security likely to result from disclosure (the closing of that station).

19. We decline to follow the Fifth Circuit's holding in *Knight v. CIA*, 872 F.2d 660, 664 (5th Cir.1989), that, absent a showing of bad faith, the CIA's determination that a document is withholdable under 50 U.S.C. § 403(d)(3) is unreviewable. While the CIA's conclusion that withheld information could lead to the disclosure of a source is entitled to great deference, *Sims*, 471 U.S. at 179, 105 S.Ct. at 1893, the Agency still bears the burden of proving the withholding is justified. 5 U.S.C. § 552(a)(4)(B). *Knight* is inconsistent with this statutory requirement. It also appears to be inconsistent with the Supreme Court's decision in *Sims* in which the Court reviewed the CIA's withholdings under § 403(d)(3) for reasonableness. *Sims*, 471 U.S. at 174, 179–80, 105 S.Ct. at 1893–94.

poses, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy." *Id.* A document is properly withheld under Exemption 7C if the public interest in disclosure is outweighed by the individual privacy interests that would suffer from disclosure. *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 1476 & 1483, 103 L.Ed.2d 774 (1989); *Van Bourg, Allen, Weinberg & Roger v. NLRB (Van Bourg II)*, 751 F.2d 982, 985 (9th Cir.1985). A *Vaughn* index must, to the extent possible without sacrificing the privacy interest in the process, provide the FOIA requester with the information necessary to contest the agency's conclusion that this balance tips in favor of withholding.

Wiener has not appealed Exemption 7C claims where only the name of an FBI agent or third person has been withheld.[20] He challenges only the relatively few withholdings in which entire documents or paragraphs have been withheld to protect the privacy interests of persons whose names appear somewhere in the withheld material. With respect to these withholdings, we conclude the FBI's affidavits are inadequate.

We focus upon the most substantial Exemption 7C withholdings—documents labeled HQ–8 and NY–88. Several pages of HQ–8 were withheld; NY–88 was withheld in its entirety.

Without violating the privacy interests of the informant or the third party, the FBI could have stated that HQ–8 recites information provided by a third party to an FBI informant detailing the third party's knowledge of several activists and protest activities planned at the 1972 Republican National Convention, discussing the possibility that John Lennon would organize a series of concerts to raise money to finance the activity,[21] and describing rivalries and jealousies within activist organizations.

Had Wiener been provided with this information, he could have questioned whether the withholding of anything other than the names of the informant, the third party, and the individuals described, implicated privacy concerns. He could also have argued that the names of the activist leaders mentioned in the document should have been released because of the substantial public interest in exploring the scope and extent of the FBI's surveillance activities during a turbulent period of this nation's history. As this brief summary demonstrates, adequate specificity could have been achieved without compromising privacy interests.[22] Instead, the FBI affidavits reveal only that the information in document HQ–8 relates to a third party who is mentioned in FBI files.

Without compromising privacy interests, the FBI could have stated that document NY–88 describes a series of meetings between a third person and various activists, discusses contests over the leadership of activist groups and complaints that activist leaders receive more publicity than the groups themselves, and reports tangential information about activist leaders, such as their habits of personal hygiene and even the peculiar behaviors of their pets. John Lennon's name appears only in the final paragraph in which it is stated that Lennon was willing to perform at a benefit concert if his appearance were not announced in advance. Without describing generally what the document contained, as we have, it was withheld in its entirety on the ground that the information withheld relates to a third party.[23]

---

**20.** We therefore do not comment upon the sufficiency of the *Vaughn* index with respect to the withholding of individual names under Exemption 7C.

**21.** It is difficult to understand why the FBI withheld the information about the series of concerts. The same information was disclosed when the cover memo attached to document HQ–8 was released.

**22.** Document HQ–8 was also withheld under Exemption 7D, protecting confidential sources. The discussion in the text also indicates the level of specificity that can be achieved without compromising a source's confidentiality.

**23.** In contrast to the broad generalities offered to justify most of its Exemption 7C withholdings, the FBI provided model explanations with respect to two sets of documents. Wiener has not appealed these withholdings, and we men-

The FBI argues the decision in *Reporters Committee*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), sanctions the categorical approach employed by the FBI in support of Exemption 7C claims. In holding that an individual's privacy interest in his "rap sheet" always outweighs the public interest in disclosure, *id.* 109 S.Ct. at 1485, the Court said "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Id.* at 1483. The FBI argues that the privacy interests of third persons whose names appear in withheld documents always outweigh the public interest in disclosure, and a *Vaughn* index therefore need only recite the fact that the document was withheld to protect the privacy interests of third persons. *Cf. Lewis,* 823 F.2d at 380 (where an entire class of documents is *per se* exempt from disclosure, regardless of content, a *Vaughn* index serves no purpose). We disagree.

■ The privacy interests of third persons whose names appear in FBI files, the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances.[24]

tion them only to provide further examples of the level of specificity required in a *Vaughn* index.

The supplemental affidavit of Agent Flynn states that four documents were withheld because they document an "investigation ... based on a citizen's inquiries to his Congressman about a nude photograph of Lennon and Yoko Ono on an album cover. The Congressman forwarded the inquiry to the FBI, which responded ... that no violation [of obscenity laws] existed." This explanation makes clear what the documents contained and that they were withheld because their release might infringe upon the privacy interests of the citizen who made the inquiry. It afforded Wiener an opportunity to argue that this privacy interest was outweighed by other considerations.

The FBI stated that Exhibit OO pertained to the FBI's investigation of someone who threatened the Lennon family. The perpetrator was never identified. The FBI noted that details contained in the document were withheld because, if released, "media publicity would undoubtedly follow. It must be assumed that this unknown subject is alive and would be aware of such publicity. The resulting effect on him is

Because it cannot be concluded that the privacy interests characteristically outweigh the public interest with respect to all of the documents withheld under Exemption 7C, the FBI's categorical *Vaughn* index is inadequate.

■ The index also fails to explain with sufficient specificity the "law enforcement purposes," 5 U.S.C. § 552(b)(7), underlying its investigation of John Lennon. No withholding under any of the exemptions listed in section 552(b)(7) is valid unless the withholding agency establishes a " 'rational nexus' between its law enforcement duties and the document for which Exemption 7 is claimed." *Binion,* 695 F.2d at 1194; *accord King,* 830 F.2d at 229; *see also Church of Scientology v. Dep't of the Army,* 611 F.2d 738, 748 (9th Cir.1980) (insufficient evidence to conclude a document was compiled for a law enforcement purpose).[25]

The index states only that John Lennon was under investigation for possible violations of the Civil Obedience Act of 1968, 18 U.S.C. § 231 (1988), and the Anti–Riot Act, 18 U.S.C. § 2101 (1988), because of his association with a radical group known as the Election Year Strategy Information

obviously unknown but can be speculated upon. Perhaps this refreshing of his memory would cause him to resume this type of threatening activity against the Lennon family or possibly other well-known personalities.... In addition, its release could well be expected to cause John Lennon's widow and her family harassment and unwarranted public attention." This statement provided Wiener with sufficient information to argue in favor of the release of the withheld document had he chosen to do so.

**24.** In contrast, the Court in *Reporters Committee* noted that an individual's privacy interest in the confidentiality of his criminal record is always high, and the public interest in the release of that information is always low. *Reporters Committee,* 109 S.Ct. at 1485.

**25.** Thus, our holding that the *Vaughn* index failed to adequately set forth the law enforcement purpose of the investigation of John Lennon applies equally to withholdings under Exemption 7D, protecting confidential sources. Both Exemption 7C and Exemption 7D exempt from disclosure only records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

Center (EYSIC).[26] The Civil Obedience Act and the Anti–Riot Act are very broad criminal statutes, prohibiting a wide variety of conduct. Citations to these statutes do little to inform Wiener of the claimed law enforcement purpose underlying the investigation of John Lennon. Without providing Wiener with further details of the kinds of criminal activity of which John Lennon was allegedly suspected, Wiener cannot effectively argue that the claimed law enforcement purpose was in fact a pretext.[27]

### D

### Exemption 7D: Identity of a Confidential Source

■■■■ Exemption 7D, 5 U.S.C. § 552(b)(7)(D), permits the government to withhold documents and portions of documents "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records ... (D) could reasonably be expected to disclose the identity of a confidential source." Id.[28] The index does not provide Wiener with information necessary to challenge the FBI's conclusion that disclosure of documents withheld on this ground would in fact reveal the identity of a confidential source.

■■■■■ The most obvious flaw in the index in this respect is its failure to state whether the purported grant of confiden-

tiality in each case was express or implied. An express grant of confidentiality is virtually unassailable. The FBI need only establish the informant was told his name would be held in confidence. An implied grant is a different matter. An informant's identity is protected by an implied grant of confidentiality only if he provides information under "circumstances from which ... an assurance [of confidentiality] could be reasonably inferred." H.R.Conf. Rep. No. 1200, 93d Cong., 2d Sess. reprinted in 1974 U.S.Code Cong. & Admin. News 6267, 6285, 6291. A claim that confidentiality was impliedly granted, unlike a claim that confidentiality was expressly granted, thus requires the court to engage in a highly contextual, fact-based inquiry. See, e.g., United Technologies Corp. v. NLRB, 777 F.2d 90, 93–94 & n. 4 (2d Cir.1985) (upholding a finding that employee-informants were implicitly granted confidentiality by the NLRB based upon "the protracted and bitter" nature of the dispute between the plaintiff and its employees' union). Without knowing whether the grant of confidentiality claimed was express or implied, the requester cannot challenge the claim intelligently.

■■■■■ Moreover, if the FBI is relying upon implied grants of confidentiality to justify its withholdings, the explanation given is inadequate. To serve its purpose,

---

**26.** The FBI's statement, contained in the supplemental affidavit of Agent Flynn, reads in relevant part:

Th[e] investigation [of John Lennon] was begun following the receipt of confidential source information that Lennon had become associated with EYSIC and its leaders. The founders of EYSIC included Rennie Davis, a "Chicago Seven" defendant, and Stewart Albert. They were soon joined by Jerry Rubin, another "Chicago Seven" defendant.... In light of the past activity of the founders of EYSIC, especially with respect to the acts of violence committed during the 1968 Democratic National Convention in Chicago, the FBI initiated this investigation into the relationship between John Lennon and EYSIC. The underlying statutes in this investigation included 18 United States Code §§ 231, 232, 2101, and 2102.... This investigation led to the FBI's accumulation of interrelated main files at [FBI Headquarters], New York, Washington Field Office, Houston, and Miami.

**27.** Wiener has argued that the law enforcement purpose behind the investigation of Mr. Lennon was in fact pretextual. In Part III we conclude it would be premature to address this contention on the merits until Wiener has had an opportunity to obtain relevant information that may be revealed by an adequate Vaughn index.

**28.** There was a substantial overlap between the FBI's withholdings to protect confidential sources under Exemption 1 and Exemption 7D. While both of these exemptions may properly be invoked to protect a confidential source, they are not identical. An Exemption 1 withholding is appropriate only if disclosure of the withheld information can reasonably be expected to damage national security. Exec. Ord. 12356 § 1.1(a)(3), 3 C.F.R. at 167. An Exemption 7D withholding is only appropriate if the information withheld was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

the index must state the circumstances surrounding the receipt of information which led the FBI to conclude the informant would not have given the information without an implicit assurance of confidentiality. Only if the requester has these facts can he intelligently argue no inference of confidentiality was justified; and only if the district court is apprised of these facts can its judgment on the merits be an informed one.[29]

Instead, the FBI said only this:

These sources [who are impliedly granted confidentiality] are equally as important to the FBI as those sources to whom an express assurance of confidentiality has been made. The disclosure of the names and/or the identifying data concerning these individuals would nullify this implied assurance of confidentiality between the individuals and the FBI.

This general assertion that sources furnishing information under express or implied grants of confidentiality are equally important, and that disclosure of the identity of the informant would be equally inconsistent with the assurances of confidentiality in either case, is of no assistance in determining whether an inference of confidentiality as to disclosure of particular information was reasonable under the circumstances.

Because the *Vaughn* index did not disclose the facts and circumstances surrounding the receipt of information from informants, the district court and opposing counsel were forced to look through a voluminous set of documents in an effort to find some evidence of the circumstances surrounding each purported grant of confidentiality. Moreover, the search necessarily accomplished little because the withheld documents, particularly in redacted form, did not provide much information of this kind.

An adequate *Vaughn* index would have guided the district court and opposing counsel to questionable claims of exemption. For example, without compromising confidentiality, the FBI could have informed Wiener and the district court that during a hearing before the Immigration and Naturalization Service regarding the deportability of John Lennon, Mr. Lennon's attorney represented that Mr. Lennon had been offered a teaching post at New York University; that the FBI later investigated the truth of this claim; and that as part of its investigation, the FBI contacted an official at New York University who stated the University had in fact offered John Lennon a teaching position. The name of this University official, and all facts which could lead to his identity, are still being withheld by the FBI under Exemption 7D. Indeed, until 1984 this information was classified as "secret" by the FBI.[30]

## II

### *District Court Findings*

"Disclosure of the factual and legal basis for the trial court's decision is

---

**29.** Three circuits adhere to the rule that information given a law enforcement agency in the course of a criminal investigation is presumed to have been given in confidence, absent evidence to the contrary. *See Schmerler v. FBI,* 900 F.2d 333, 337 (D.C.Cir.1990); *Kimberlin v. Dep't of Treasury,* 774 F.2d 204, 208 (7th Cir. 1985); *Johnson v. Dep't of Justice,* 739 F.2d 1514, 1518 (10th Cir.1984); *but see Dow Jones & Co., Inc. v. Dep't of Justice,* 917 F.2d 571, 579–80 (D.C.Cir.1990) (Edwards, J., dissenting from denial of rehearing en banc; urging the full court to reverse *Schmerler* ). Requiring the agency to disclose the facts and circumstances surrounding the receipt of information is not inconsistent with this rule. An adequate *Vaughn* index insures the district court a record upon which to base its decision, regardless of what presumption may be appropriate or what conclusion may be justified when a properly developed record proves to be inconclusive.

**30.** We reject Wiener's contention that the FBI failed to adequately justify the breadth of its withholdings under Exemption 7D. Wiener contends an agency may withhold only the names of confidential sources and information which may lead to the exposure of a confidential source. However, the plain language of Exemption 7D authorizes the withholding of information "*furnished by* a confidential source" in the course of a criminal investigation, whether or not disclosure of the information would lead to the exposure of the source. 5 U.S.C. § 552(b)(7)(D) (emphasis added). The *Vaughn* index in this case clearly states that the information withheld was furnished by confidential sources. Thus, if the FBI establishes the sources were truly confidential, and if the district court accepts the veracity of the government's affidavits, the withholdings were proper.

especially compelling in FOIA cases." *Van Bourg, Allen, Weinberg & Roger v. NLRB (Van Bourg I),* 656 F.2d 1356, 1357 (9th Cir.1981). The district court's findings of facts and conclusions of law must be " 'sufficiently detailed to establish that the careful *de novo* review prescribed by Congress has in fact taken place.' " *Id.* at 1358 (quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Bell,* 603 F.2d 945, 950 (D.C.Cir.1979)). *Accord Truitt v. Dep't of State,* 897 F.2d 540, 547 (D.C.Cir.1990). "The reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document[s]." *Van Bourg I,* 656 F.2d at 1358 (quoting *Ray v. Turner,* 587 F.2d 1187, 1197 (D.C.Cir.1978)).

The district court's findings consist of a list of the affidavits submitted by government and the conclusory statement that "[t]he above-listed affidavits and declarations carry the government's burden of proof to show that the FOIA exemptions were properly applied in this case." Like the *Van Bourg I* court, "[w]e are unable to determine which exemption the court applied to each document withheld and what relevant undisputed facts provided the basis for non-disclosure." *Id.* at 1357. After receiving an adequate *Vaughn* index and conducting any additional proceedings the district court deems necessary on remand, the court must "state in reasonable detail the reasons for its decision as to each document in dispute." *Id.* at 1358.

 The district court also erred by failing to make specific findings on the issue of segregability. 5 U.S.C. § 552(b) provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Here, many documents were withheld either in their entirety or in substantial part. It is reversible error for the district court "to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof," with respect to that document. *Church of Scientology,* 611 F.2d at 744. The court on remand must make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable.

### III

### *Triable Issues of Fact*

Wiener argues summary judgment was inappropriate because triable issues of fact remain. In particular, he contends the FBI has failed to establish by uncontested facts that the documents withheld under Exemptions 7C and 7D were "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), and that the documents withheld under Exemption 1 were not withheld merely "to conceal violations of law, inefficiency, or administrative error[, or] to prevent embarrassment to a person, organization, or agency." Exec. Ord. 12356 § 1.6(a), 3 C.F.R. at 170. He points to a memorandum signed by FBI Director J. Edgar Hoover expressing concern that John Lennon might not be deported prior to the 1972 Republican National Convention;[31] a memorandum from Acting FBI Director Gray stating the INS's belief that it had a weak case for deportation and that an arrest on narcotics charges would insure immediate deportation;[32] and a memorandum to Senator Strom Thurmond, later forwarded to Attorney General John Mitchell, stating that termination of Lennon's visa would be a "strategic countermeasure" against the political strategies of anti-war and anti-Nixon groups.[33]

It would be premature to address Wiener's claim. Without an adequate *Vaughn* index and sufficient findings of fact to guide us we cannot say whether these documents, in light of the rest of the record, raise a triable issue of fact.

---

31. This memorandum is the cover memo to the document labeled HQ–8.

32. This document was labeled HQ–24.

33. The release or withholding of this document is not a subject of this litigation, but it was made part of the record below.

This panel shall retain jurisdiction over all subsequent appeals.

REVERSED AND REMANDED.