704 F.2d 1065
 Fed. Sec. L. Rep. P 99,182
JERRY T. O'BRIEN, INC., doing business as Pennaluna & Co.,
et al., Plaintiffs- Appellants,
v.
SECURITIES AND EXCHANGE COMMISSION, et al., Defendants-Appellees,
and
Harry F. MAGNUSON and H.F. Magnuson & Company,
Cross-Plaintiffs-Appellants,
v.
SECURITIES AND EXCHANGE COMMISSION, et al.,
Cross-Defendants-Appellees.
 Nos. 82-3108, 82-3109 and 82-3185.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 8, 1983.
Decided April 25, 1983.
 
 Linda D. Fienberg, S.E.C., Washington, D.C., for defendants-appellees.
 William D. Symmes, Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., for cross-plaintiffs-appellants.
 C. Dean Little, Lesourd, Patten, Fleming, Hartung & Emory, Seattle, Wash., for plaintiffs-appellants.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before SKOPIL, PREGERSON, and FERGUSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 * The Securities and Exchange Commission (SEC) moved the district court to dismiss appellants' claims for injunctive relief. The court granted the motion after concluding that agency-initiated subpoena enforcement proceedings afforded appellants an adequate legal remedy. This appeal followed. Appellate jurisdiction is based on 28 U.S.C. Sec. 1292(a)(1).
 
 
 2
 Since this appeal presents only questions of law, our review is de novo. State of Oregon, Division of State Lands v. Riverfront Protection Association, 672 F.2d 792, 794 (9th Cir.1982).
 
 
 3
 The relevant factual background may be summarized briefly. In September 1980, the SEC issued a Formal Order of Investigation (FOI) "In the Matter of H.F. Magnuson & Co."[1] The FOI stated that "Magnuson, Pennaluna & Co., Inc., Benjamin A. Harrison, corporations headquartered at H.F. Magnuson & Co., and others" (emphasis added) were suspected of engaging in securities violations. Neither Jerry T. O'Brien nor Jerry T. O'Brien, Inc., doing business as Pennaluna & Co., was named in the FOI. Subsequently, however, the SEC informed O'Brien's attorney that Jerry T. O'Brien, Inc., was "under consideration as being one of the 'others' engaged" in the suspected violations.
 
 
 4
 The FOI authorized SEC personnel to investigate the parties targeted by the FOI for a variety of securities laws violations including insider trading; failing to file certain required statements with the SEC; filing false or misleading annual reports, proxy statements, or ownership statements; and engaging in stock sales in violation of the antifraud provisions of the Securities Act of 1933.[2] The FOI also empowered certain SEC personnel to subpoena witnesses, documents, and other information. The SEC served subpoenas on Jerry T. O'Brien, Inc., and on several individuals and entities not targeted by the investigation.[3]
 
 
 5
 Appellants sought to enjoin the investigation because they thought it was conducted improperly. In granting the SEC's motion, the district court concluded that appellants were not entitled to injunctive relief because they had an adequate remedy at law--the issues they raised could be litigated in subpoena enforcement proceedings initiated by the SEC under 15 U.S.C. Sec. 78u(c).
 
 II
 
 6
 Appellants' challenges to the SEC's investigation fall into two categories: those that involve SEC actions aimed directly at appellants, and those that involve SEC subpoenas served on non-parties to the investigation.
 
 A. SEC actions directed at appellants
 
 7
 The district court correctly concluded that appellants had an adequate legal remedy in which to resist the SEC subpoenas served on them. This remedy was adequate because an SEC subpoena is not self-executing. A recipient of an SEC subpoena may refrain from complying with it, without penalty, until directed otherwise by a court order. See Donaldson v. United States, 400 U.S. 517, 523-25, 91 S.Ct. 534, 538-39, 27 L.Ed.2d 580 (1971).[4] A court will not enforce an SEC subpoena directed at the target of an investigation unless the agency, at an evidentiary hearing, demonstrates that it has complied with the requirements of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). These are that (1) the agency has a legitimate purpose for the investigation; (2) the inquiry is relevant to that purpose; (3) the agency does not possess the information sought; and (4) the agency has adhered to administrative steps required by law. Id. at 57-58, 85 S.Ct. at 254-55;[5] Lynn v. Biderman, 536 F.2d 820, 824 (9th Cir.), cert. denied sub nom. Biderman v. Hills, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). Thus, appellants have an adequate legal remedy with regard to subpoenas served on them.[6]
 
 
 8
 B. The target's right to challenge SEC subpoenas served on non-parties
 
 
 9
 Ordinarily, "parties summoned [by an administrative subpoena] and those affected by a disclosure may appear or intervene before the District Court and challenge the summons." Reisman v. Caplan, 375 U.S. 440, 445, 84 S.Ct. 508, 511, 11 L.Ed.2d 459 (1963). The SEC noted correctly in oral argument that the Supreme Court has since limited this precept. Such intervention "is permissive only and is not mandatory. The language recognizes that the District Court ... may allow the [target of the investigation] to intervene." Donaldson v. United States, 400 U.S. at 529-30, 91 S.Ct. at 541-42 (emphasis added). Thus, when "an administrative summons is issued to a third party," the person being investigated "may attempt to restrain voluntary compliance by the third party, assuming [the target] is aware of the issuance of the summons prior to compliance ...." United States v. Genser, 582 F.2d 292, 300 (3d Cir.1978) (emphasis added).
 
 
 10
 Appellants contend that third-party subpoena enforcement proceedings do not afford targets an adequate legal remedy unless the agency notifies them of the identities of the subpoenaed third parties. Appellants stress that the lack of such notice denies targets of an investigation the opportunity even to seek permissive intervention in enforcement proceedings. They point out further that some of the unidentified parties probably lack the ability, resources, or motive to challenge the subpoenas, especially since the investigation implicates persons other than themselves. Moreover, SEC subpoenas do not inform recipients of their right to resist; rather, the subpoenas suggest that failure to comply will result in penalties.[7] Appellants argue that, unless they are given notice of and an opportunity to seek intervention in any proceeding to enforce third-party subpoenas, the agency could circumvent the protections afforded by United States v. Powell.
 
 
 11
 The SEC argues that appellants lack standing to challenge subpoenas issued to third parties, and the district court so held.[8] Barring questions of privilege or other special circumstances, it is true that appellants have no right to protect or withhold documents held by a third party. Donaldson, 400 U.S. at 523, 91 S.Ct. at 538. See United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). But appellants, as targets of the investigation, do have a right to be investigated consistently with the Powell standards. Cf. Powell, 379 U.S. at 57-58, 85 S.Ct. at 254-55. As a practical matter, this is a right that only appellants would assert.
 
 
 12
 Cases involving the question of standing to object to agency process have arisen primarily in the context of IRS summonses. The Second Circuit has held that taxpayers lack standing to object to enforcement of an IRS summons directed to a third party because the taxpayers neither own nor possess the items sought by the IRS. Foster v. United States, 265 F.2d 183, 188 (2d Cir.), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959). The Supreme Court has stated as a "general rule that the issuance of a subpoena to a third party to obtain the records of that party does not [itself] violate the rights of a defendant." Miller, 425 U.S. at 444, 96 S.Ct. at 1624. The Ninth Circuit had earlier stated that "customers have no standing to object to [grand jury or other] subpoenas requiring their banks to produce records of the customers' accounts." Harris v. United States, 413 F.2d 316, 318 (9th Cir.1969).
 
 
 13
 For at least two reasons this lack of standing rule has no application in the present matter.[9] The cases holding that targets lack standing to object to process issued to third parties do so based on the premise that targets have no right to maintain the confidentiality of information held by third parties. E.g., Miller, 425 U.S. at 444, 96 S.Ct. at 1624; Harris, 413 F.2d at 318. This premise is irrelevant to the present case. While appellants lack any right to maintain confidentiality of information held by third parties, they do have the right to be investigated consistently with the Powell standards. To assure that the target has the opportunity to assert this right, notice of third-party subpoenas is necessary.
 
 
 14
 Third-party recipients of agency process appear to lack standing to require an agency to conduct its investigation of a target consistently with Powell. See Sierra Club v. Morton, 405 U.S. 727, 733, 734-35, 92 S.Ct. 1361, 1365, 1365-66, 31 L.Ed.2d 636 (1972). Thus, denying the target notice of agency process issued to third parties necessarily denies the target the ability to assert its right to be investigated consistently with Powell. The target's right could be asserted by seeking permissive intervention in enforcement proceedings brought by the agency against the third party or by other appropriate district court proceedings. As a practical matter, unless the target of an SEC investigation receives notice of subpoenas served on third parties, no one will question compliance with the Powell standards as to those subpoenas.
 
 
 15
 Notice to targets of third-party subpoenas need not unduly burden the agency or the courts. Compliance with Powell can be determined on the basis of affidavits. See Lynn v. Biderman, 536 F.2d 820, 823 (9th Cir.1976). Such notice will merely afford targets an opportunity to question whether agency actions comply with Powell.
 
 The Supreme Court has observed:
 
 16
 Since a person may ... be wholly unaware of the fact that he is being investigated until his friends who are interviewed so inform him, and since this may sometimes give rise to antagonism and a feeling that the [Securities & Exchange] Commission is besmirching him behind his back, no reason is apparent why, simply as a matter of good will, the [SEC] should not in ordinary cases send a copy of its order for investigation to the person under investigation.
 
 
 17
 Hannah v. Larche, 363 U.S. 420, 447 n. 26, 80 S.Ct. 1502, 1517 n. 26, 4 L.Ed.2d 1307 (1959) (quoting Attorney General's Committee on Administrative Procedure, Monograph, Securities Exchange Commission 34-41). Absent special circumstances involving a serious threat to the integrity of the investigation, this rationale should apply as well to service of agency subpoenas on third parties.
 
 III
 
 18
 As to subpoenas directed to appellants as targets, subpoena enforcement proceedings provide an adequate forum in which to challenge the SEC's conduct vis-a-vis the Powell standards. But as to third-party subpoenas, appellants for all pretrial purposes will be denied an adequate forum unless the SEC gives them notice of the third-party subpoenas. Because such notice was not given, the district court's order as it relates to third-party subpoenas is reversed and the case remanded for proceedings consistent with the views herein expressed.
 
 
 19
 AFFIRMED in part, REVERSED in part.
 
 
 
 [1]
 This order was issued pursuant to the Securities Act of 1933, 15 U.S.C. Sec. 77s(b), and the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78u(a), 78u(b). Before an FOI is issued, SEC personnel conduct preliminary or informal investigations during which "no process is issued [nor] testimony compelled." 17 C.F.R. Sec. 202.5. Thereafter, the Commission "may, in its discretion, make such formal investigations and authorize the use of process as it deems necessary." Id. An FOI launches the formal investigation, defines its scope, and establishes limits within which investigative staff may resort to process. See SEC v. Arthur Young & Co., 584 F.2d 1018, 1023 (D.C.Cir.1978)
 
 
 [2]
 Including possible violations of the Securities Act of 1933 sections 5(a), 15 U.S.C. Sec. 77e(a); 5(c), 15 U.S.C. Sec. 77e(c); 17(a), 15 U.S.C. Sec. 77q(a); and the Securities and Exchange Act of 1934 sections 10(b), 15 U.S.C. Sec. 78j(b); 13(a), 15 U.S.C. Sec. 78m(a); 13(d), 15 U.S.C. Sec. 78m(d); 13(g), 15 U.S.C. Sec. 78m(g); 14(a), 15 U.S.C. Sec. 78n(a); 16(a), 15 U.S.C. Sec. 78p(a); and rules promulgated thereunder. 17 C.F.R. Secs. 240.10b-5; 240.13a-1; 240.13d-1; 240.13d-2; 204.14a-3; 204.14a-9; 240.16a-1
 
 
 [3]
 Any relief accorded Jerry T. O'Brien, Inc., would accrue to Jerry T. O'Brien as an individual, and for all practical purposes any claims asserted by him as an individual are moot
 
 
 [4]
 The possibility of excesses in the conduct of agency investigations may explain why agency subpoenas are not self-executing but require judicial enforcement when a recipient of a subpoena does not voluntarily comply. See, e.g., Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 219, 66 S.Ct. 494, 510, 90 L.Ed. 614 (Murphy, J., dissenting) ("To allow a non-judicial officer, unarmed with judicial process, to demand the books and papers of an individual is an open invitation to abuse of [the subpoena] power.... Only by confining the subpoena power exclusively to the judiciary can there be any insurance against this corrosion of liberty."). See also id. at 206 n. 37, 66 S.Ct. at 504 n. 37; United States v. DeGrosa, 405 F.2d 926, 929 (3d Cir.1969) (Constitution requires opportunity for judicial review prior to penalties for non-compliance with administrative subpoenas)
 
 
 [5]
 Although Powell involved the Internal Revenue Service, the Powell standards have been extended to SEC investigations, as well as those of other administrative agencies. E.g., Lynn v. Biderman, 536 F.2d 820, 824 (9th Cir.), cert. denied sub nom. Biderman v. Hills, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); SEC v. ESM Gov't Securities, Inc., 645 F.2d 310, 313 (5th Cir.1981). But see id. at 313 ("We do not suggest that every aspect of the law regarding an IRS summons controls an SEC subpoena.")
 
 
 [6]
 District court review of the propriety of SEC actions in its investigation would also have been inappropriate because "final agency action," a prerequisite to judicial review, had not yet occurred. See FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)
 
 
 [7]
 See Oklahoma Press Publishing Co., 327 U.S. 186, 219, 66 S.Ct. 494, 510, 90 L.Ed. 614 (1946) (Murphy, J., dissenting) ("Many persons have yielded [to an administrative subpoena] solely because of the air of authority with which the demand is made, a demand that cannot be enforced without subsequent judicial aid. Many invasions of private rights thus occur without the restraining hand of the judiciary even intervening."). Indeed, the third party subpoenas in this case warned each recipient that he was "hereby required to appear" before a designated SEC officer and "required to bring ... and produce at said time and place" the documents delineated. Each subpoena contained the cryptic admonition, "Fail not at your peril."
 
 
 [8]
 The SEC also asserts that courts may not impose procedural requirements upon agencies. However, the case cited by the SEC, Steadman v. SEC, 450 U.S. 91, 104, 101 S.Ct. 999, 1009, 67 L.Ed.2d 69 (1981), does not support this assertion. In fact, the courts have ruled to the contrary. See Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 951 (9th Cir.1976); FTC v. Turner, 609 F.2d 743, 745 (5th Cir.1980) (agencies are bound by Federal Rules of Civil Procedure when in federal courts); But see Hoving Corp. v. FTC, 290 F.2d 803, 807 (2d Cir.1961) (court will not dictate to agency regarding minor procedural technicality)
 
 
 [9]
 A district court articulated part of the problem of a rule denying targets standing to object to third party subpoenas:
 [T]he more important problem which troubles this court is the practical disadvantage which falls upon the [target] in this situation. Reisman v. Caplan ... and the cases which follow it ... are based upon the premise that the summons may not be enjoined in equity because the taxpayer retains an adequate remedy at law--intervention in the government's suit to enforce the summons. But for this legal remedy to become more than a fiction it is necessary for the third party upon whom the summons has been issued ... to refuse to obey the summons' command. As a practical matter, few ... ever contest a .... summons .... What is significant is that the taxpayer's "adequate remedy at law" is often hollow in practical reality.
 Kirschenbaum v. Beerman, 376 F.Supp. 398, 399-400 (W.D.Pa.1974). The court went on to hold, however, that taxpayers lacked standing to seek an injunction prohibiting their banks from producing information to the IRS. Id. at 400.