DIAMOND STATE INSURANCE
COMPANY, Plaintiff,

v.

REBEL OIL COMPANY,
INC., Defendant.

REBEL OIL COMPANY, INC.,
Counterclaimant,

v.

DIAMOND STATE INSURANCE
COMPANY, Counterdefendant,

REBEL OIL COMPANY, INC.,
Third–Party Plaintiff,

v.

SEDGWICK JAMES OF NEVADA,
INC., Third–Party Defendant,

DIAMOND STATE INSURANCE
COMPANY, Third–Party
Plaintiff,

v.

SEDGWICK JAMES OF NEVADA,
INC.; Mark Mielke, Third–
Party Defendants.

No. CV–S–93–815–LDG(RJJ).

United States District Court,
D. Nevada.

Sept. 22, 1994.

Matthew L. Sharp, Reno, NV, for plaintiff.

Constance L. Akridge, Las Vegas, NV, for Rebel Oil.

James Bradshaw, Las Vegas, NV, for third-party defendants, James and Mielke.

Janice Brown, Las Vegas, NV, for third-party defendant, Western Gen.

## ORDER

JOHNSTON, United States Magistrate Judge.

The matters before the undersigned Magistrate Judge include motions submitted by both parties, as well as a non-party, regarding the discovery of substantially identical information. The court has reviewed the non-party Motion of Western General Agency to Quash Subpoena and Objections (# 32), Diamond State's Joinder in Motion to Quash Subpoena and Objections (# 35), Rebel Oil's Opposition to Motion to Quash Subpoena and Objections and Countermotion to Compel Production of Documents (# 37), and Rebel Oil's Motion for Order Compelling Discovery (# 40).

## BACKGROUND

On March 29, 1993, Plaintiff, Diamond State Insurance Company ("Diamond State") issued a commercial liability insurance policy to Defendant, Rebel Oil Company, Inc. ("Rebel Oil"). Diamond State issued this policy through its agent, Western General Agency ("Western General"). Rebel Oil also negotiated this policy through its agent, Sedgwick James. Thereafter, Diamond State issued a midterm "Cancellation Notice" alleging that Rebel Oil had made material misrepresentations in securing the policy.

Diamond State subsequently filed a complaint against Rebel Oil alleging fraud and

misrepresentation, unjust enrichment and asking for declaratory relief. Rebel Oil then filed an answer and counterclaim against Diamond State alleging unfair claims practice, bad faith, breach of contract and asking for declaratory relief. Rebel Oil also brought a third party complaint against Western General, which was subsequently dismissed without prejudice.

On November 11, 1993, Rebel Oil served its First Set of Interrogatories and Request for Production of Documents on Diamond State. Diamond State objected to three of the requests for production of documents, as set forth below:

> REQUEST NO. 12. All documents received from or sent to anyone at Western General Agency from Diamond State in any way relating to Rebel Oil Company, Sedgwick James or Diamond State Policy number SMP 423882.

> ANSWER TO REQUEST NO. 12. OBJECTION the request is duplicative, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Further, the requests calls for information produced in anticipation of litigation and protected by the work product doctrine and/or attorney-client privilege.

> REQUEST NO. 13. Any and all agreements between Western General and Diamond State Insurance Company.

> ANSWER TO REQUEST NO. 13. OBJECTION the request is duplicative, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Without waiving the objection as to any other agreement that may exist see D00503–00540 for the underwriting agreement.

> REQUEST NO. 14. Any and all documents sent to or received from Western General by Diamond State that contain communications/information regarding Diamond State Insurance Company's policies and protocols of underwriting of insurance policies and binding coverage.

> ANSWER TO REQUEST NO. 14. OBJECTION the request is duplicative, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence.

Plaintiff's Answers to Interrogatories at 18–19, attached as Exhibit E to Rebel Oil's Motion to Compel (# 40). With respect to Request No. 12, Diamond State provided Rebel Oil with a "privilege log" indicating the documents Diamond State considered to be privileged. Motion to Compel (# 40), Exhibit F.

On June 24, 1994, Rebel Oil served subpoenas upon Western General's Las Vegas, Nevada, and Salt Lake City, Utah, offices. These subpoenas demanded the production of documents that were substantially similar to those which Rebel Oil had previously demanded from Diamond State. Specifically, the subpoenas demanded the production of:

> Western General's entire file regarding Rebel Oil including but not limited to any and all documents Western General Agency sent to Diamond State Insurance Company or which Western General received from Diamond State Insurance Company in any way relating to Rebel Oil and/or Diamond State Policy Number SMP 42382, any and all documents which Western General received from, Absolute Insurance Agency, Steven Lemond, Steve Jones, American Insurance and Investment Corporation and/or Reliance Insurance Company which relate to Rebel Oil Company.

> Any and all agreements between Western General Agency and Diamond State Insurance Company that contain communication regarding Diamond State Insurance Company's policies and protocols of underwriting of insurance policies and binding coverage.

On July 11, 1994, Western General filed its Motion to Quash Subpoena and Objections (# 32), arguing that Rebel Oil's subpoenas were overly broad, burdensome, duplicative and that they required the disclosure of privileged and confidential information. On July 25, 1994, Diamond State filed its Motion in Joinder to Quash Subpoenas and Objections (# 35), also arguing that the subpoenas requested documents which contained privileged information and that the subpoenas were overly broad and ambiguous. Diamond State also suggested that the subpoenaed documents be reviewed *in camera* to deter-

mine whether the documents were, in fact, privileged or protected. Finally, Diamond State argued that Rebel Oil needed to file a separate motion to compel if it wished to proceed on its original discovery dispute with Diamond State.

On July 26, 1994, Rebel Oil filed its opposition and countermotion to Western General's Motion (# 32), arguing that no justifiable basis existed for quashing the subpoenas. On July 28, 1994, Rebel Oil also filed a separate motion to compel the discovery of Diamond State (# 40). Diamond State did not file a memorandum in opposition to this discovery motion.

## DISCUSSION

This court must address the separate discovery motions with regard to: I) Western General, and II) Diamond State.

## I. DISCOVERY OF WESTERN GENERAL'S DOCUMENTS

The issues before the court with regard to the subpoenas served upon Western General are: 1) whether the subpoenas are vague, overly broad and ambiguous; 2) whether enforcement of the subpoenas would be duplicative and would impose an undue burden and expense upon Western General; 3) whether some of the subpoenaed documents are privileged or otherwise protected from discovery; and 4) whether an *in camera* review of the disputed documents is appropriate.

## A. VAGUE, OVERLY BROAD AND AMBIGUOUS

 A subpoena is sufficiently limited and specific in its directive where compliance to its terms would not be unreasonably burdensome. *United States v. Palmer,* 536 F.2d 1278, 1282 (9th Cir.1976). The court must use its discretion to determine whether this standard has been satisfied. See *United States v. George,* 883 F.2d 1407, 1418 (9th Cir.1989) (Court's discretion to quash subpoena). If a subpoena is overly broad and burdensome, the court may, on its own initiative, modify the language in order to correct the ambiguity and prevent the undue burden. *Westside Ford v. United States,* 206 F.2d 627, 635 (9th Cir.1953), citing *Hagen v. Port-*

*er,* 156 F.2d 362, 366 (9th Cir.1946), *cert. denied* 329 U.S. 729, 67 S.Ct. 85, 91 L.Ed. 631 (1946); Fed.R.Civ.P. 45(c)(3)(A)(iv).

Western General argues that the scope of the subpoenas is vague and ambiguous and that compliance would therefore be oppressive and burdensome. Yet, Western General fails to identify any specific language in the subpoenas to support this contention. The court will not speculate as to which portion of the subpoenas Western General considers vague.

Diamond State argues that the subpoenas are vague and overly broad as a result of the subpoenas' demand for the production of "all agreements" between Western General and Diamond State. Specifically, Diamond State argues that the term "all agreements" is vague and would require Western General "to guess" as to its meaning and scope. Diamond State asserts that this is an inappropriate burden to place on the non-party, Western General.

 Because Diamond State was not the recipient of the subpoenas, it has standing to challenge them only where its challenge asserts that the information is privileged or protected to itself. See *Jerry T. O'Brien, Inc. v. Securities and Exchange Commission,* 704 F.2d 1065, 1068 (9th Cir. 1983), *rev'd on other grounds,* 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), citing *Donaldson v. United States,* 400 U.S. 517, 523, 91 S.Ct. 534, 538, 27 L.Ed.2d 580 (1971). Diamond State's challenge of vagueness is raised only to prevent Western General from "guessing" as to what constitutes an agreement under the scope of the subpoenas. This challenge is not raised to protect information that is privileged to Diamond State. Diamond State, therefore, does not have standing to challenge the subpoena on the grounds of vagueness.

 Nevertheless, this court recognizes that the term "all agreements" could be vague and ambiguous and that compliance thereto may be burdensome. This request effectively requires that Western General determine the intent of Diamond State with regard to any perceived agreements between

Western General and Diamond State. Western General should not be required to make such a determination in responding to the subpoena. The court will therefore modify, in part, the second paragraph of the subpoena to request the production of "Any and all *written* agreements *regarding the agency relationship* between Western General Agency and Diamond State Insurance Company...." Request No. 13 of Rebel Oil's Request for the Production of Documents shall be modified in the same manner.

The court finds the subpoenas to be otherwise sufficiently limited and specific in directive. The subpoenas specifically request the production of all documents relating to Rebel Oil's insurance policy transaction with Western General and Diamond State. The request is proper and not unduly broad. See e.g. *Mines and Metals Corp. v. Securities and Exchange Commission,* 200 F.2d 317, 321 (9th Cir.1952), *cert. denied* 345 U.S. 941, 73 S.Ct. 832, 97 L.Ed. 1367 (1953) (subpoena of records relating to transaction approved).

## B. DUPLICATIVE; UNDUE BURDEN AND EXPENSE

■ The court will quash or modify a subpoena which subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iv). The court has broad discretion in determining whether discovery is burdensome and oppressive. See e.g. *Little v. City of Seattle,* 863 F.2d 681, 685 (9th Cir.1988). The court may also make any order which justice requires to protect a party or person from undue burden, oppression or expense. *United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 369 (9th Cir.), *cert. denied* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982).

■ Western General submits three arguments claiming that compliance with the subpoenas would be duplicative, burdensome and expensive. First, Western General claims that production of Diamond State's underwriting guidelines and policies would "require an individualized search of numerous insurance client's files as there is no single book or series of documents which would satisfy this inquiry." Motion to Quash

(# 32), at 4. No affidavit or other evidence is submitted in support of this allegation.

This generalized and unsupported allegation of undue burden is not sufficient to prevent enforcement of the subpoenas. See *Doyle v. F.B.I.,* 722 F.2d 554, 555 (9th Cir. 1983). Moreover, absent a clearer explanation in support of this assertion, the Court finds little credibility in this claim. It is difficult to comprehend that the underwriting guidelines and policies of Diamond State—which guidelines Western General must follow as an agent of Diamond State—are not readily accessible to Western General but, rather, are scattered throughout the files of various clients. The court therefore finds this argument to be meritless.

Second, Western General claims that "the task of providing full information in response" to the subpoenas would be burdensome because it would require legal counsel to gather, identify and examine the requested documents as to privilege or work product protection. Yet, in a somewhat contradictory statement, Western General has asserted that it has already identified and gathered the subpoenaed documents and has sent them to Diamond State's legal counsel. Western General submitted privilege and document logs which confirm that the documents have been reviewed for applicable privileges. See Motion to Quash (# 32), Exhibits C and D. Western General's admission, that the subpoenaed documents have already been identified and gathered, casts doubt on its claim that compliance with the subpoenas would be burdensome. This claim is not supported by the evidence.

■ Third, Western General asserts that the subpoenas are duplicative, improper and an abuse of the process of the court. Specifically, Western General asserts that the subpoenas demand the production of the identical documents that Diamond State has previously been requested to produce in response to Rebel Oil's Request for Production of Documents. Western General has also asserted that it has sent the subpoenaed documents to Diamond State's legal counsel and that Diamond State, in turn, has provided some of these documents to Rebel Oil.

Rebel Oil has responded to this assertion, stating that it was not aware that Diamond General possessed any of Western General's documents. Rebel Oil argues that Western General should be compelled to produce all subpoenaed documents which have not yet been provided through Diamond State and that Western General should provide a verification of compliance.

Both the subpoenas issued to Western General and the Request for Production of Documents issued to Diamond State demand, in part, the same documents. Both require production of: 1) all documents sent or received between Western General and Diamond State which relate to Rebel Oil or Diamond State Policy No. SMP 42382; 2) all agreements between Western General and Diamond State; and 3) all documents sent or received between Western General and Diamond State which contain information regarding Diamond State's policies and protocols of underwriting insurance policies and binding coverage. However, the subpoenas issued to Western General demand the production of the following additional documents which are not included in the discovery request served upon Diamond State: 1) Western General's entire file regarding Rebel Oil; and 2) all documents received from Absolute Insurance Agency, Steven Lemond, Steve Jones, American Insurance and Investment Corporation and/or Reliance Insurance Company which relate to Rebel Oil.

The court may limit discovery where the documentation sought is unreasonably cumulative or duplicative. *Shoen v. Shoen*, 5 F.3d 1289, 1299 (9th Cir.1993) (concurring opinion), citing Fed.R.Civ.P. 26. The court recognizes the apparent duplication of portions of the separate discovery requests served upon Western General and Diamond State. However, although they are duplicative in part, the discovery requests have been directed toward two separate business entities (i.e. Western General and Diamond State) and the documents actually maintained in the files of each entity may not be identical. This possibility is particularly evident after considering Western General's description of the manner in which underwriting guidelines have been filed.

Therefore, to ensure full discovery of the subpoenaed documents and, at the same time, limit the unnecessary production of identical information by a non-party, the court will not order Western General to produce any of the subpoenaed documents which have already been sent to Diamond State. Rather, the court will require Diamond State to produce these subpoenaed documents. Western General must submit to Rebel Oil a log identifying all documents previously transmitted to Diamond State. Western General will be required to produce any subpoenaed documents which have not been provided to Diamond State.

## C. PRIVILEGED AND PROTECTED DOCUMENTS

Western General and Diamond State assert that the subpoenas should be quashed because they demand the disclosure of: *i)* confidential commercial information of other clients; ii) privileged attorney-client information; and iii) protected work-product information.

### 1. Confidential Commercial Information of Other Clients

 The court may limit or quash a subpoena which requires the disclosure of confidential commercial information. Fed. R.Civ.P. 45(c)(3)(B)(i); see also *Columbia Broadcasting System, Inc.*, 666 F.2d at 368. Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained. See e.g. *Allnet Communication Services, Inc. v. Federal Communications Commission*, 800 F.Supp. 984, 988 (D.D.C.1992); *Zenith Radio Corp. v. Matsuchita Elec. Indus. Co.*, 529 F.Supp. 866, 889–91 (E.D.Pa.1981).

 The person asserting confidentiality has the burden of showing that the privilege applies to a given set of documents. Fed. R.Civ.P. 45(d); see also *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (party asserting privilege has burden of proof). The claim must be expressly made and supported by a sufficient description of

the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim. *Id.*

■ Western General argues that disclosure of the underwriting policies and protocols of Diamond State would require the disclosure of private, confidential commercial material found in other clients' files. This claim is unsubstantiated. Western General provides no reasonable explanation why Diamond State's underwriting policies could only be found in the files of various other clients. Western General also fails to adequately describe the nature of the alleged confidential information so that Rebel Oil can contest this claim. A generalized, self-serving, conclusory assertion of protection or privilege is without merit. See *Doyle,* 722 F.2d at 555.

### 2. Privileged Attorney–Client Information

■ The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *In re Grand Jury Investigation,* 974 F.2d at 1070, citing *In re Grand Jury Subpoenas (Hirsch),* 803 F.2d 493, 496 (9th Cir.1986), *correction printed* 817 F.2d 64 (9th Cir.1987); *In re Fischel,* 557 F.2d 209, 211 (9th Cir.1977). "[T]he privilege is limited to 'only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *In re Grand Jury Investigation,* 974 F.2d at 1070, citing *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

■ "[T]he party asserting the privilege has the burden of making a *prima facie* showing that the privilege protects the information that the party intends to withhold." *In re Grand Jury Investigation,* 974 F.2d at 1070. This burden is met by demonstrating that the documents adhere to the essential elements of the attorney-client privilege. *Id.,* citing *Fischel,* 557 F.2d at 211.[1] This demonstration is generally accomplished by the submission of a privilege log which identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the documents or informed of its substance, and (e) the date the document was generated, prepared, or dated. *In re Grand Jury Investigation,* 974 F.2d at 1071, citing *Dole v. Milonas,* 889 F.2d 885, 888 n. 3, 890 (9th Cir.1989).[2] Affidavits may also be required to answer any necessary questions left open by the log. See *In re Grand Jury Investigation,* 974 F.2d at 1071.

Western General and Diamond State assert that compliance with the subpoenas will require the disclosure of privileged attorney-client information. Yet, only general conclusory allegations are offered in support of this claim. Western General and Diamond State have submitted a privilege log. However, it fails to meet the established requirements. Western General and Diamond State have therefore failed to establish an attorney-client privilege with regard to the requested documents.

### 3. Work Product Protection

■ The work-product rule is not a privilege but an immunity protecting, from discovery, documents and tangible things prepared by a party or its representative in anticipation of litigation. Fed.R.Civ.P.

---

1. The attorney-client privilege may be divided into eight elements: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived." *In re Grand Jury Investigation,* 974 F.2d at 1071, n. 2, citing *Fischel,* 557

F.2d at 211 (quoting 8 John H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).

2. Although the "privilege log" approach is generally used to establish the attorney-client privilege, the Ninth Circuit has indicated that other methods may be used to establish the privilege. *In re Grand Jury Investigation,* 974 F.2d at 1071. Regardless of the method used, a *prima facie* showing must be made of the existence of the attorney-client privilege. See *Id.*

26(c)(3); *Admiral Insurance Company v. United States District Court, District of Arizona*, 881 F.2d 1486, 1494 (9th Cir.1989); *Schmidt v. California State Automobile Association*, 127 F.R.D. 182, 183 (D.Nev.1989). The rule provides absolute immunity for "opinion" work product, i.e., documents which reflect an attorney's mental impressions, conclusions, opinions or legal theories; and a qualified immunity for all other "non-opinion" work product. *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1431 n. 17 (3d Cir.1991), citing *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *National Union Fire Insurance Company of Pittsburgh, Pa., v. Murray Sheet Metal Company, Inc.*, 967 F.2d 980, 983–84 (4th Cir.1992); *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir.1979). The qualified immunity for non-opinion work product may be overcome by showing a sufficient need. *Id.* The primary purpose of the rule is to prevent exploitation of another party's efforts in preparing for litigation. *Holmgren v. State Farm Mutual Automobile Insurance Company*, 976 F.2d 573, 576 (9th Cir.1992).

■ Application of the work product rule is addressed to the sound discretion of the court (*In re Sealed Case*, 676 F.2d 793, 813 (D.C.Cir.1982) but is often difficult. *McFadden v. Norton Company*, 118 F.R.D. 625, 628 (D.Neb.1988). The courts have not found a "neat general formula" to determine whether documents were prepared in anticipation of litigation. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981), citing *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623 (5th Cir.1976), *cert. denied* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976), *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir.1979). Determining the driving force behind the preparation of each requested document is required in resolving a work product immunity question. *Murray Sheet Metal*, 967 F.2d at 984.

■ The party asserting the work-product rule has the burden of establishing, for each document, the rule's application. Fed.

R.Civ.P. 45(d)(2); *Conoco Inc. v. United States Dept. of Justice*, 687 F.2d 724, 728 (3rd Cir.1982) (FOIA case). This burden is met by submitting detailed affidavits sufficient to show that precise facts exist to support the immunity claim. *Harvey's Wagon Wheel, Inc. v. N.L.R.B.*, 550 F.2d 1139, 1141 (9th Cir.1976) (FOIA case); *Nutmeg Insurance Co. v. Atwell, Vogel & Sterling, a Division of Equifax Services, Inc.*, 120 F.R.D. 504 (W.D.La.1988). The asserting party will usually also provide a privilege log describing the documents it claims to be protected. This log alone, however, is often inadequate to conduct the necessary analysis. See *Murray Sheet Metal Company, Inc.*, 967 F.2d at 985 (record consisting mainly of privilege log inadequate).

■ Western General and Diamond State assert that compliance with the subpoenas will require the disclosure of documents protected by the work-product rule. Yet, these assertions are merely set forth in self-serving conclusory statements. Although Western General and Diamond State provide a privilege log, it only provides a vague description of the documents. No affidavits have been submitted substantiating the work product claim.

The record is insufficient to find application of the work product immunity. The privilege log fails to provide adequate information for the court to make a sound determination that the documents were prepared in anticipation of litigation. The log indicates that eight of the eleven documents were prepared prior to August 13, 1993, the date that Western General and Diamond State retained Leverty and Associates as legal counsel. While work product documents may, in some cases, be prepared prior to litigation (*Schmidt*, 127 F.R.D. at 184 n. 3) the fact that eight of the eleven documents were prepared prior to obtaining legal counsel casts substantial doubt on the work product claim. See *Murray Sheet Metal Company*, 967 F.2d at 985 (serious doubts where documents prepared prior to contacting counsel).

The court is put in the untenable position of having to speculate in order to find application of work product protection. The court

refuses to do this. Diamond State and Western General had the burden of proof in this matter but failed to submit sufficient supporting evidence, including the necessary affidavits. Additionally, each had the opportunity to provide further support of its claim by filing a reply to Rebel Oil's Opposition (# 37). Each failed to do so. The court therefore denies the work product claim.

## D. IN CAMERA REVIEW

Western General and Diamond State suggest that an *in camera* review would be appropriate to determine whether the asserted privilege and protections apply.

■■■ *In camera* review is generally disfavored.[3] *PHE, Inc. v. Department of Justice,* 983 F.2d 248, 252 (D.C.Cir.1993). It is not to be used as a substitute for a party's obligation to justify its withholding of documents. *Id.,* citing *Schiller v. N.L.R.B.,* 964 F.2d 1205, 1209 (D.C.Cir.1992), quoting *Lykins v. United States Dept. of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984). *In camera* review should not replace the effective adversarial testing of the claimed privileges and protections. *Id.; Wiener v. Federal Bureau of Investigation,* 943 F.2d 972, 979 (9th Cir. 1991). Resort to *in camera* review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible. *Wiener,* 943 F.2d at 979.

■■■ Neither Western General nor Diamond State has fulfilled its obligation to justify the withholding of the requested documents. Neither has submitted the required

affidavits or other sufficient evidence supporting its claim of privilege and protection. Neither filed a reply to Rebel Oil's Opposition (# 37). Under these circumstances, granting an *in camera* review would be paramount to permitting Western General and Diamond State to shirk their duty of justifying the withholding of the documents. *In camera* review is therefore inappropriate.

## II. DISCOVERY OF DIAMOND STATE'S DOCUMENTS

In a motion separate from its countermotion to compel Western General's compliance with the subpoenas, Rebel Oil has moved the court to compel Diamond State to produce the documents requested in its previous request for the production of documents. Diamond State, itself, has argued that Rebel Oil should file this motion in order to provide a "setting" wherein both parties could "fully address" the discovery issues. Joinder in Motion to Quash (# 35), at 8. Diamond State, however, has failed to provide an argument, other than those contained in its Joinder in Motion to Quash, in opposition to Rebel Oil's discovery motion.[4]

The court need not engage in a lengthy discussion with regard to Rebel Oil's motion. The documents requested from Diamond State are essentially identical to those requested from Western General. Diamond State has presented insufficient evidence to establish application of the attorney-client privilege or the work product immunity with regard to these documents. Moreover, Diamond State's claim of vagueness has been adequately addressed by the court so as to

---

3. The United States Supreme Court has held that a district court may, in appropriate circumstances, conduct *in camera* review of documents. *United States v. Zolin,* 491 U.S. 554, 571–72, 109 S.Ct. 2619, 2630–31, 105 L.Ed.2d 469 (1989) (discussing crime-fraud exception to attorney-client privilege). The Court held that a district court should not conduct *in camera* review solely because a party begs it to do so. *Id.* at 571, 109 S.Ct. at 2630. Rather, there must first be a sufficient evidentiary showing creating a legitimate issue as to application of the privilege or protection asserted. See *Id.* The court then must use its sound discretion to determine whether *in camera* review is appropriate under the facts and circumstances of the particular case. *Id.*

4. Rule 140–6 of the Local Rules of Practice for the United States District Court, District of Nevada, states that "the failure of an opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion." Although Diamond State has not filed a memorandum in opposition to this particular discovery motion, the court recognizes that Diamond State's Joinder in Motion to Quash (# 35) provides points and authorities in opposition to the disclosure of the documents that are requested in this discovery motion. Therefore, the court's ruling is based upon a review of the substantive arguments presented by the parties, rather than on Local Rule 140–6.

prevent undue burden in complying with the discovery request. The court therefore grants Rebel Oil's Motion for Order Compelling Discovery and for Award of Expenses (# 40).

### ORDER

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Western General's Motion to Quash Subpoena and Objections (# 32), Diamond State's Joinder in Motion to Quash Subpoena and Objections (# 35), and Rebel Oil's Opposition to Motion to Quash Subpoena and Objections and Countermotion to Compel Production of Documents (# 37) are granted in part and denied in part. The subpoenas shall be modified as instructed herein. Western General shall submit to Rebel Oil a log identifying all documents that it has previously transmitted to Diamond State. Western General shall produce all subpoenaed documents not previously provided to Rebel Oil or Diamond State.

IT IS FURTHER ORDERED that Rebel Oil's Motion for Order to Compel Discovery (# 40) is granted. Document Request No. 13 is modified as instructed herein. Diamond State shall produce all requested documents to Rebel Oil, including those subpoenaed documents previously provided to it by Western General.