Daniel J. FIDUCCIA; Edward H. Kohn, Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF JUSTICE; United States Department of Defense; United States Department of the Treasury, Defendants–Appellees.

No. 97–16420.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1998.

Decided Aug. 4, 1999.

Lawrence Teeter, Los Angeles, California, for plaintiffs-appellants.

Jocelyn Burton, Assistant United States Attorney, San Francisco, California, for defendants-appellees.

Before: WALLACE, T.G. NELSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case involves various Freedom of Information Act issues.

## FACTS

Fiduccia and Kohn filed a Freedom of Information Act request in 1986, which they have supplemented with several more in subsequent years. The 1986 request, by Fiduccia only, is on his letterhead listing him as providing "research" and "publishing services." It asks for six broad categories of documents, ranging from documents filed by an executive department with a Senate committee, to "all documents ... relating to the seeking ... of search warrants" for materials held by third parties, and "all documents ... relating to disciplining of federal officers or employees who have violated the Privacy Protection Act of 1980."

He repeated and expanded his request in 1992, on a letterhead listing him as providing "legal affairs writing" and "special projects." He added, for example, "[a]ll documents ... relating to civil suits filed against the Justice Department and/or any of its ... agents following and as a result of the search warrants...." Thirteen days later, Fiduccia and Kohn (who filed a declaration dated a couple of days before saying he joined in Fiduccia's requests) sued the Department of Justice under the Freedom of Information Act for noncompliance. The parties eventually stipulated to stay the lawsuit for six months. The stipulation says that "the parties have agreed that the most productive process to facilitate an informal resolution of plaintiff's FOIA lawsuit is to have plaintiffs submit a new FOIA request," which Fiduccia and Kohn expected to complete the same week, and "[b]ecause of the breadth of the new request, the parties have agreed that a six-month period is necessary to process the request and allow the plaintiffs sufficient time to review the documents generated by the request."

A couple of weeks later, in May of 1993, Fiduccia and Kohn submitted a new request, which is the subject of this lawsuit. The new request is much more focused and specific than the old ones. It asks for all documents relating to thirteen different searches done by various federal law enforcement agencies. The documents were to include all papers relating to the searches and to obtaining the search warrants, and also all papers relating to any lawsuits against any federal agencies on account of the searches. The searches were all over the country—Minneapolis, Spokane, Puerto Rico, New York, Los Angeles, and elsewhere. The request states that Fiduccia and Kohn are journalists and asks for a waiver or reduction of fees.

Thousands of documents were produced free of charge. The Executive Office of United States Attorneys produced 1,387 documents in full, 16 pages in part, and withheld 15 pages. Other agencies, includ-

ing the Solicitor General's Office, the Drug Enforcement Administration, the Internal Revenue Service, the Immigration and Naturalization Service, the Department of Defense, and the Federal Bureau of Investigation, produced, redacted, and withheld numerous additional documents and pages.

The parties made cross motions for summary judgment regarding the documents redacted and not produced. This appeal by Fiduccia and Kohn is from the district court's partial grant of summary judgment to each side, and its subsequent modification of its judgment regarding the Immigration and Naturalization Service and Department of Defense documents.

### *ANALYSIS*

 Though this is review of a summary judgment, our review in a FOIA summary judgment case is not simply de novo, nor do we ask whether there is a genuine issue of fact in most cases. Instead, in a FOIA case, we first determine whether the district judge had an adequate factual basis for decision, and if not, remand. If there was an adequate factual basis, we will overturn the district court's fact findings underlying its decision only for clear error. We review de novo whether a FOIA exemption applies to particular material.[1] On matters of discretion, we review for abuse of discretion.

### I. *The stay until 2001.*

Plaintiffs requested all papers relating to searches of a newspaper in Minneapolis and of a television station in Spokane. The vague 1986 request covered these materials, and the more precise 1993 request made it clear that these particular searches were the subject of the request. The FBI found the papers but needed until 2001 to produce all of them.

The FBI's explanation for why it needed another eight years was provided in two affidavits, by a supervisory special agent and a paralegal. They explained that requests covering no more than a hundred pages went into one queue, over a hundred into another, so that one big request would not delay numerous small ones. These two files contained around 1,800 pages, so they went into the slow queue. The slow queue was delayed because of the increased workload of the FBI unit handling FOIA requests, the shortage of personnel, a big case that happened to come along, an increase in litigation, and a new law giving priority to requests concerning the assassination of President Kennedy.[2]

The district court granted the FBI's request for a stay until 2001. Plaintiffs argue that the FBI did not make a sufficient showing for the stay, had not asked for enough money from Congress to deal with its increased FOIA request burden, and that the district court should have required the FBI to give them a preference because they had filed a FOIA lawsuit and were journalists.

 We reject the arguments that plaintiffs were entitled to a preference, that is, that they were entitled to jump the queue. They argue that they should get a "litigation preference," that is, that requesters who sue agencies under FOIA should have their requests handled before requesters who do not file lawsuits. They have filed a FOIA lawsuit. Although we have mentioned that filing suit "can" create a preference in the discretion of the district judge in appropriate circumstances, we have never said that it must.[3] There is no reason evident why it should in this case. An automatic preference for no reason except the filing of a lawsuit would generate many pointless and burdensome lawsuits,

---

**1.** *Schiffer v. FBI,* 78 F.3d 1405, 1409 (9th Cir.1996).

**2.** Pub.L. 102–526, 106 Stat. 3443 (1992); Pub.L. 103–345, 108 Stat. 3128 (1994), reprinted in history notes at 44 U.S.C.S. § 2107.

**3.** *Exner v. FBI,* 542 F.2d 1121, 1123 (9th Cir.1976); *Mayock v. Nelson,* 938 F.2d 1006, 1008 (9th Cir.1991).

so we have never adopted a rule of automatic preference.

The statute provides for "expedited processing" where a requester demonstrates "compelling need." But the statute expressly provides that district courts do not have jurisdiction to review agency denials of expedited processing after the agency has provided a complete response to the request for expedition.[4] Plaintiffs have not argued nor have they shown entitlement to expedited processing, nor that the district court had jurisdiction to review any denial of it. Thus there is no basis in this case for enabling plaintiffs to jump the queue.

But the queue is too long. Even without jumping the queue, people who file Freedom of Information Act requests in 1986, revised and clarified in 1993, cannot be made to wait until 2001. That is 15 years from the initial request, eight years from the request that could be plainly understood. The value of information is partly a function of time. Hardly anyone who needs information can anticipate having the same need for it, or use for it, 15 or eight years later. Congress gave agencies 20 *days*, not years, to decide whether to comply with requests and notify the requesters, and authorized agencies to give themselves extensions for 10 *days* for "unusual circumstances."[5] Telling the requester "You'll get the documents 15, or eight, years from now" amounts as a practical matter in most cases to saying "regardless of whether you are entitled to the documents, we will not give them to you."

At the time the district court decided this case, the statute authorized the district court to retain jurisdiction and allow the agency additional time if the government could show "exceptional circumstances" and "due diligence."[6] The district court's findings do not establish that the circumstances delaying processing

were "exceptional" rather than ordinary and expected, and that the agency exercised "due diligence." The decision of the executive branch not to pass on the bureau's request to the legislative branch would be consistent with a policy choice by the executive branch to delay FOIA requests rather than ask for additional funds to meet them in a timely way.[7]

Though FOIA doubtless poses practical difficulties for federal agencies, federal agencies can educate Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance. So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have.

This is not to denigrate the practical problems. It may be that agency heads, such as the Attorney General in this case, can be forced by the Freedom of Information Act to divert staff from programs they think more valuable to Freedom of Information Act compliance. It may be that people with ulterior motives can use Freedom of Information Act requests to interfere with the proper functioning of federal agencies. Arguably taxpayers are providing an excess of free research and copying services to authors and investigators. But these policy concerns are legislative, not judicial, and we intimate no views on them. Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher.

 Delay until 2001, in the face of the statute, is not supported by the record. The district court found that the FBI had exercised due diligence because it had requested additional money to deal with FOIA requests and been turned down, redistributed personnel to deal with the

---

**4.** 5 U.S.C. § 552(a)(6)(E).

**5.** 5 U.S.C. § 552(a)(6).

**6.** 5 U.S.C. § 552(a)(6)(C), subsequently rewritten.

**7.** *Cf. Mayock v. Nelson,* 938 F.2d 1006, 1007–8 (9th Cir.1991).

backlog, and was attempting to deal with the backlog in the most efficient manner possible. That finding is not clearly erroneous. According to the FBI's affidavits, the FBI was able in the early 1980's to keep up with a caseload only 22% less than the current one; its backlog has since tripled and it has become unable to keep up. The district court found that the FBI was "deluged" with FOIA requests "not necessarily contemplated by Congress." That finding, and the implicit finding of "exceptional circumstances," is clearly erroneous. The FBI's own affidavits show that the circumstances were unexceptional, a slight upward creep in the caseload. The FBI says that the reason it fell so far behind was this slight increase and "employee cutbacks," and also repeated rejection of its budget requests within the executive branch, by the Office of Management and Budget and by the Department of Justice, before the requests even got to Congress. In the absence of the "exceptional circumstances" required by the statute, the "*Open America* stay" until 2001 is erroneous.

## II. *Affidavits and Vaughn indexes.*

Plaintiffs argue that the Immigration and Naturalization Service, Drug Enforcement Agency, and Solicitor General's Office failed to file satisfactory affidavits or *Vaughn* indexes of the documents that they refused to produce, that the Internal Revenue Service filed an affidavit but no *Vaughn* index, and that the Department of Defense filed its *Vaughn* index too late, so the district court should have granted summary judgment in plaintiffs' favor and against those agencies.

 There is no statutory requirement of a *Vaughn* index or affidavit. The term "*Vaughn* index" arises out of a District of Columbia Circuit decision [8] describing a helpful device for specifying documents not produced. Congress did not speak of an "index." The statute says that an agency has to "notify the person making such request of such determination and the reasons therefor." [9] When an agency denies a request, the agency bears the burden of justifying its denial with a sufficiently detailed description of what it is refusing to produce and why so that the requester and the court can have a fair idea what the agency is refusing to produce and why.

 As we said in *Wiener v. F.B.I.*, "the purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate opportunity to review, the soundness of the withholding." [10] Consistent with this purpose, we said "a *Vaughn* index is not required where it is not needed to restore the traditional adversary process." [11] In *Minier v. C.I.A.*, we held that "when a FOIA requester has sufficient information to present a full legal argument, there is no need for a *Vaughn* index." [12] In *Minier*, the agency also presented no affidavit, just a declaration presenting a legal argument, but we held that in the circumstances, it was not required to produce any more. The requester wanted to know whether an individual whom he thought had been involved in assassinating President Kennedy was a CIA agent. The law gave the CIA a right to refuse to confirm or deny that someone was a CIA agent, and the deniability of the request did not turn on what papers were withheld.

 Thus our precedents plainly hold that neither a *Vaughn* index nor an affidavit is necessarily required in all

**8.** *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973).

**9.** 5 U.S.C. § 552(a)(6)(A)(i).

**10.** *Wiener v. Federal Bureau of Investigation,* 943 F.2d 972, 977 (9th Cir.1991) (internal quotation marks omitted).

**11.** *Id.* at 978 n. 5.

**12.** *Minier v. Central Intelligence Agency,* 88 F.3d 796, 804 (9th Cir.1996).

cases, though either or both (or more, as when a judge requires an in camera review [13]) may be required in any particular case, depending on the circumstances. The statutory phrase "notify the person making such request of such determination and the reasons therefor" [14] requires that the agency provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and why, and the court can decide whether the exemptions claimed justify the nondisclosure.

### A. *Drug Enforcement Agency.*

■ Appellants asked the DEA, in a request reformulated in 1994, for all documents relating to a search of a San Diego lawyer's office in 1983. The DEA responded that it had found six pages that were responsive, and furnished copies of all of them. The documents are redacted by black marks. The context shows that the redactions are of names. Three FOIA exemptions were claimed to justify the redactions, "endanger the life or physical safety of any individual," [15] "unwarranted invasion of personal privacy," [16] and "related solely to the internal personnel rules and practices of an agency." [17] The district judge decided that no index or affidavit was needed, because "[i]t is easy to review the documents and ascertain what information has been redacted since there are only 6 pages produced." The district judge had an "adequate factual basis" [18] for his decision not to require an index or affidavit, so we affirm it.

■ The requester, the district judge, and we, can easily see what it was the agency was refusing to disclose and why. We need not reach the question of whether the agency was correct, because the argument goes only to the absence of a *Vaughn*

index and absence of an affidavit. The agency was obligated to "notify the person making such request of such determination and the reasons therefor." [19] The redacted documents were in this case an entirely satisfactory (perhaps superior) alternative to a *Vaughn* index or affidavit for performing this function. This is not to say that photocopies of the redacted documents can serve as a substitute for a *Vaughn* index or affidavit in every case, but they were adequate in this case, because the requester and the judge could see from context what it was that the agency was keeping back—names of agents and informants—and context together with the agency cover letter made it clear why.

■ There is an important distinction between withheld documents and redacted documents. Where documents are withheld altogether, the requester needs a *Vaughn* index of considerable specificity to know what the agency possesses but refuses to produce. An affidavit may be necessary to verify that the agency has nothing more in its possession than what it has described. But where documents are redacted, and the form of redaction—black marks over small bits of text leaving context unredacted—enables the requester to figure out from context just what sort of information is being withheld, an affidavit saying what was withheld and a *Vaughn* index describing what was withheld may be, as they would be in this case, a superfluity. The redacted document may be less work for the agency and more useful to the requester and the court than a *Vaughn* index or affidavit.

■ FOIA is not sui generis. An analogous disclosure issue arises routinely in ordinary private civil litigation. A plaintiff's lawyer requests an insurance claims file, and defendant's lawyer must disclose

---

**13.** 5 U.S.C. § 552(a)(4)(B).

**14.** 5 U.S.C. § 552(a)(6)(A)(i).

**15.** 5 U.S.C. § 552(b)(7)(F).

**16.** 5 U.S.C. § 552(b)(7)(C).

**17.** 5 U.S.C. § 552(b)(2).

**18.** *Schiffer v. FBI,* 78 F.3d 1405, 1409 (9th Cir.1996).

**19.** 5 U.S.C. § 552(a)(6)(A)(i).

sufficient description and reasons for what is not being produced—witness statements withheld based on attorney work product, letters to and from counsel withheld based on attorney-client privilege, and so forth. Plaintiff's lawyer is entitled to know what he is not getting and why, so that he can dispute applicability of the grounds. Some lawyers dictate detailed lists of what they are not producing, some produce redacted copies annotated in the margin to show what is redacted and why, and some prepare affidavits. The form of disclosure is not critical. What matters is the substantive adequacy of the disclosures, in whatever form, to enable the requester to be able to make an intelligent judgment whether to contest claims of nondiscoverability and the court to decide them. Any form—letter, *Vaughn* index, affidavit, copy of redacted document—may be adequate or inadequate, depending on the circumstances. Because the redacted documents sufficed in this case to show the requester and the district court what was not disclosed and why, the district judge had an "adequate factual basis" [20] for decision and therefore did not err in deciding not to require a superfluous *Vaughn* index or affidavit.

### B. *Solicitor General's Office.*

 Appellants likewise argue that the Solicitor General's Office should have been required to give them a *Vaughn* index and affidavit. It gave them a letter saying that the Solicitor General's Office had one document relating to one of the searches their request addressed. The letter said the document was a memorandum from the Solicitor General's Office and gave its date and the case it related to, and said that production was denied pursuant to the statutory exception for inter and intra-agency memoranda "which would not be available by law to a party other than an agency in litigation with the agency," [21] based on attorney work product and deliberative process privileges. The district judge thought the letter made it plain enough what was withheld and why, and had an "adequate factual basis" [22] for his decision.

### C. *Immigration and Naturalization Service.*

 Fiduccia and Kohn requested all documents relating to an INS search in 1981 of a New York lawyer's office. The INS responded that it had 85 responsive pages, produced 34 without redaction, and produced the other 51 with redactions based on the exemptions for records compiled for law enforcement that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," [23] and personnel files the "disclosure of which would constitute a clearly unwarranted invasion of personal privacy." [24] Though the letter is by itself an insufficient substitute for a *Vaughn* index or affidavit, the government also supplied the 51 pages with redactions, and it is obvious looking at them that what are redacted are names of informants, names of agents and file numbers.

The district judge wrote that he had reviewed all the papers, so he had an "adequate factual basis" [25] for decision. Because appellant's argument goes to absence of a *Vaughn* index and affidavit, not to applicability of the exemptions, we do not reach applicability of the exemptions. The district judge and the requesters did not need a *Vaughn* index or affidavit to know what kind of information was redacted. Because appellants argue only that the district court should have required a *Vaughn* index and affidavit, not that its findings were inadequate to justify its con-

---

**20.** *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir.1996).

**21.** 5 U.S.C. § 552(b)(5).

**22.** *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir.1996).

**23.** 5 U.S.C. § 552(b)(7)(C).

**24.** 5 U.S.C. § 552(b)(6).

**25.** *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir.1996).

clusions, we do not reach the question of whether the district court's findings were adequate under *Wiener*.[26]

#### D. *Internal Revenue Service.*

■■■■ Fiduccia and Kohn argue that the Internal Revenue Service failed to file a *Vaughn* index. So it did. The Freedom of Information Act request sought all documents relating to an IRS search of two Memphis television stations that related to a tax evasion indictment of an athletic coach. Instead of a *Vaughn* index, the IRS filed two affidavits describing in great detail exactly what documents the IRS had and why it did not produce them. The IRS disclosed that it had reports by two agents describing the searches in detail, and it had a letter from a regional counsel giving recommendations and reasons regarding appeal of an adverse district court decision. The regional counsel's letter of advice was claimed to be exempt attorney work product and attorney-client communication.[27] The two agent's reports on the two searches were claimed to be exempt from disclosure because they would disclose return information of taxpayers[28] and disclosure of names of IRS employees who participated in the search "could conceivably subject them to harassment or annoyance in their private lives" and amount to "an unwarranted invasion of the personal privacy of lower level Government employees."[29] We do not, as with these other arguments directed to the absence of *Vaughn* indexes and affidavits, reach the question whether the exemptions were properly applied. As we held in *Minier*, "when the affidavit submitted by an agency is sufficient to establish that the requested documents should not be disclosed, a *Vaughn* index is not required.... Moreover, when a FOIA requester has sufficient information to present a full legal argument, there is no need for a

*Vaughn* index."[30] Plaintiffs rely on *Wiener* for their argument that a *Vaughn* index is necessary despite a sufficient affidavit, but *Wiener* does not say that. We carefully noted in *Wiener* that "[c]onsistent with its purpose, a *Vaughn* index is not required where it is not needed to restore the traditional adversary process."[31] Because there is no statutory requirement of a *Vaughn* index, and in this case the affidavits sufficiently informed plaintiffs and the court what the IRS refused to disclose and why, the district court had a sufficient factual basis for decision and was within its discretion in not requiring a *Vaughn* index.

#### E. *Department of Defense.*

Plaintiffs argue that the Department of Defense failed to submit a timely affidavit, and that the district court gave the Department unreviewable discretion to make redactions, without adequate particularization through affidavits regarding exemption claims. Plaintiffs had requested all documents relating to the search of a part-time journalist, part time defense consultant, for classified papers he was alleged wrongfully to have in his possession. The Department filed an affidavit precisely laying out its several claimed grounds for exemption, and it also filed a 10 page *Vaughn* index of 102 paragraphs describing in detail each document that the Department refused to produce. The district judge had initially overlooked the affidavit and ordered production, but then revised his judgment under Rule 60(b) upon discovering that the affidavit had been submitted, and granted the Department's motion, requiring production only to the extent that documents could be redacted to "protect the privacy of private individuals and government agents."

■■■■ Plaintiffs argue that the Department of Defense affidavit was not

---

26. *Wiener v. FBI*, 943 F.2d 972, 987–88 (9th Cir.1991).

27. 5 U.S.C. § 552(b)(5).

28. 5 U.S.C. § 552(b)(3); 26 U.S.C. § 6103.

29. Quotations from declaration of Deborah Lambert–Dean, excerpts of record 164.

30. *Minier*, 88 F.3d at 804.

31. *Wiener*, 943 F.2d at 978 n. 5.

timely filed, so should not have been considered. But the record indicates that it was properly filed, the district judge initially overlooked it in the mountain of paper, and upon realizing that he had made a mistake, corrected his mistake. District courts have the power to correct mistakes in judgments.[32]

■ Plaintiffs also challenge the district court's order on the ground that it leaves the discretion whether to redact with the Department of Defense rather than with the court. This argument is correct. The district court ordered the Department to produce documents "if such documents can be redacted to protect the privacy of private individuals and government agents." We said in *Wiener* that the district court must make the findings on whether documents can be redacted, and remanded so that it could do so.[33] Accordingly we remand so that the district court can make the findings on whether the documents can be redacted.

## III. Executive Office of United States Attorneys.

Plaintiffs concede that they failed to take an administrative appeal before filing their FOIA suit regarding documents from the Executive Office of United States Attorneys, but claim that when they did so after summary judgment was granted against them, the district court's denial of their Rule 59 motion "was improper." They do not say why it was improper, and no reason why is evident to us. Therefore, we affirm the summary judgment insofar as it is in favor of the Executive Office of United States Attorneys.

## IV. Federal Bureau of Investigation.

### A. FBI Printed Form.

■ Plaintiffs had sought all documents relating to searches of a law office in Sacramento and a business in New York. The FBI responded with an affidavit from an FBI section chief and a form letter, saying that 142 pages were "reviewed" and 109 pages "are being released," and listed the numbers of five exemption subsections. It is not possible to determine from the affidavit and the printed form what sort of documents are withheld and which exemptions apply to which documents. The form letter says in its printed (not typed) language that "where pages have been withheld in their entirety, a deleted page information sheet has been substituted showing the reasons or basis for the deletion." No such "page information sheets" are in the record, so neither the district court nor we can determine whether such sheets were furnished or whether they adequately disclosed what sort of information was withheld and why. Under *Wiener* the "boilerplate" is "clearly inadequate" because "[n]o effort is made to tailor the explanation to the specific document withheld." [34] Accordingly, we remand because the district court did not have an adequate factual basis for decision.

### B. Seelmeyer and Santaliz.

Plaintiffs requested all documents relating to searches of two individuals, Richard Seelmeyer and Coqui Santaliz. The FBI refused to produce any papers or to confirm or deny that it had any, on the ground that to confirm or deny that it did would invade the privacy of those two individuals. It claimed exemption from disclosure under the FOIA exemptions for "records or information compiled for law enforcement ... that ... could reasonably be expected to constitute an unwarranted invasion of personal privacy ...," [35] and "personnel and medical files ... the disclosure of which would constitute a clearly unwarranted invasion of personal privacy...." [36]

---

**32.** Fed.R.Civ.P. 60(b)(1); *Kingvision Pay–Per–View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir.1999).

**33.** *Wiener,* 943 F.2d at 988.

**34.** *Wiener,* 943 F.2d at 978–79.

**35.** 5 U.S.C. § 552(b)(7)(C).

**36.** 5 U.S.C. § 552(b)(6).

The FBI said it would produce the documents only if the plaintiffs produced either waivers by the individuals or proof that they were dead.

Plaintiffs argue that the FBI asserted Seelmeyer's and Santaliz's privacy interests in bad faith, and that they are outweighed by the public interest in finding out what is in the documents relating to the searches. Plaintiffs do not make any argument regarding the FBI position that privacy no longer restricts disclosure after the subject is dead, so we need not decide whether the FBI position is correct on this point, or whether people are entitled to protection of their reputations under the "unwarranted invasion of personal privacy"[37] exemption from law enforcement disclosures after they die.

The FBI had disclosed to the press in 1988 that "its agents had searched the home of Richard Seelmeyer." The news story says that he was a former Congressional aide who published a military newsletter, and that the search was "part of the continuing investigation of fraud and bribery in Pentagon weapons procurement." The FBI had not disclosed anything about Santaliz, so far as the record indicates, but she had spoken to the press herself about the search of her house. She complained that the FBI took her typewriter and the draft of a novel she was writing, and she attributed the search to her support for Puerto Rican independence.

■ The district court correctly held that these individuals did not lose their statutory interest in privacy[38] by reason of the earlier publicity. Their interest in avoiding dissemination of law enforcement information about themselves did not disappear. That the FBI itself had publicized its search of Seelmeyer's house did not take away his interest in not having the publicity repeated years later or expanded upon. It was a long time ago when Santaliz herself publicized the search of her house, and she might not be indifferent to whether the FBI disclosed what was in its files. It is hard to see why the fact that these people's houses were searched at all was kept secret, when the FBI did not keep secret the searches discussed in the preceding section, but appellants' arguments go not to identity but to the papers in the FBI files relating to the search.

■ Plaintiffs argue that the fact that some documents relating to the search are necessarily public in various courthouses makes it pointless to apply the privacy exemption at least to those documents, and that the public interest in knowing what the FBI did outweighs these individuals' interests in privacy. These arguments must be rejected under *United States Department of Justice v. Reporters Committee for Freedom of the Press.*[39] The Supreme Court held in that case that rap sheets are categorically protected from disclosure under the individual privacy exemption for law enforcement information, even though the information has previously been divulged to the public, "without regard to individual circumstances,"[40] regardless of whether the person seeking it is a reporter, a neighbor, or a prospective employer,[41] and regardless of whether it had one time been made public.[42] The rap sheets had "practical obscurity,"[43] even though the information in them was public and had previously been publicized, because finding the information would require diligent searches of courthouse files, county archive, and local police stations throughout the country. The privacy interests of the individuals outweighed (categorically, regardless of individual circumstances) the FOIA purpose

---

37. 5 U.S.C. § 552(b)(7)(C).

38. 5 U.S.C. § 552(b)(7)(C).

39. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

40. *Id.* at 780, 109 S.Ct. 1468.

41. *Id.* at 771, 109 S.Ct. 1468.

42. *Id.* at 767, 109 S.Ct. 1468.

43. *Id.* at 762, 109 S.Ct. 1468.

of "contributing significantly to understanding of the operations or activities of the government." [44] We therefore affirm the summary judgment insofar as it relates to the privacy exemption for information relating to the searches of these two individuals' houses.

## CONCLUSION

We VACATE the judgment, and REMAND for proceedings consistent with this opinion. Costs in favor of appellants Fiduccia and Kohn.

---

44. *Id.* at 775, 780, 109 S.Ct. 1468.